**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| UBER TECHNOLOGIES, INC. and PORTIER, LLC, | No. 2:24-cv-02103 |
| Plaintiffs, | **DECLARATION OF ALLISON FORD IN SUPPORT OF UBER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| CITY OF SEATTLE, | |
| Defendant. | |

I, Allison Ford, declare as follows:

1.      My name is Allison Ford.  I am over the age of 18, have personal knowledge of the facts stated in this declaration, and can competently testify to their truth.

2.      I am a Senior Public Policy Manager for Uber Technologies, Inc. ("Uber"), and have been in that role since September 2024.  Prior to that, I was a Public Policy Manager for Uber for the Pacific Northwest Region, a role I held from the time that I joined Uber in August 2021.  My responsibilities include managing public policy and public affairs for Uber throughout the Pacific Northwest region.  This involves advocating for Uber's policy goals as well as managing relations with state and local governments, media communications, and community relations.

3.      I make this declaration in support of Uber's Motion for a Temporary Restraining Order and Preliminary Injunction, which seeks to temporarily restrain and preliminarily enjoin Defendants from enforcing the App-Based Worker Deactivation Rights Ordinance enacted by the City of Seattle in August 2023 and set to take effect on January 1, 2025 (the "Ordinance").  In connection with my role at Uber, I am familiar with the Ordinance and have participated in communications, hearings, and Uber's written submissions regarding the Ordinance and accompanying proposed rules regarding implementation and compliance (the "Model Rules").

4.      The Seattle City Council introduced a law regulating the deactivation of app-based workers in May 2023, and voted in favor of passing the law in August 2023.[1]  Since that time, Uber has been actively engaged with the City of Seattle and Seattle's Office of Labor Standards ("OLS," or the "Agency"), which has rulemaking and enforcement authority under the Ordinance.  Over the course of that engagement, which has spanned many months, Uber has consistently raised concerns that the Ordinance and Model Rules will lower the company's safety, quality, and privacy standards.

5.      In May 2023, the City Council held hearings about the proposed Ordinance.  I attended those hearings and offered testimony on Uber's behalf.  A true and complete copy of my testimony from the May 9, 2023 hearing is attached as **Exhibit 1** to this declaration.  A true and correct copy of my testimony from the May 23, 2023 hearing is attached as **Exhibit 2** to this declaration.

6.      The Ordinance was signed into law in August 2023.  For nearly eight months after its enactment, OLS did not take any steps to initiate the rulemaking process contemplated by the Ordinance.

7.      In the absence of any rulemaking action by OLS, Uber did not know all of the requirements it would need to comply with when the Ordinance went into effect.  OLS's lack of guidance was significant because the Ordinance leaves to OLS's discretion significant aspects of the regulation, such as the precise categories of records that need to be disclosed under Section 8.40.090.  Additionally, while Uber believes the Ordinance itself is fundamentally problematic and unconstitutional, Uber remained uncertain as to whether OLS's eventual rules might at least help ameliorate some of the most problematic aspects of the Ordinance, including, for instance, whether OLS would provide greater clarity as to what sorts of deactivation policies it considers to be "reasonably related" to a network company's "safe and efficient operations," as relevant to the requirements of Section 8.40.050 of the Ordinance.[2]

8.      On April 8, 2024, OLS emailed stakeholders, including Uber, to inform them that it planned to hold meetings to discuss the rulemaking process beginning in May 2024.  On May 1, 2024,

---

[1] History for Seattle City Council Bill No. 120580, Office of the City Clerk of Seattle Legislative Information Center, https://seattle.legistar.com/LegislationDetail.aspx?ID=6214973&GUID=20C5F7BD-7898-47C2-9854-E3A42FFCD664 (last visited Dec. 17, 2024).

[2] Ordinance § 8.40.050(A)(2).

however, OLS informed stakeholders that it was postponing the start of those meetings. A true and complete copy of this email exchange is attached as **Exhibit 3** to this declaration.

9. More than three months later, on August 20, 2024, OLS informed Uber and other stakeholders that it would once again begin the rulemaking process. A true and correct excerpt of a copy of OLS's August 20, 2024 email is attached as **Exhibit 4** to this declaration.

10. On August 28, 2024, Uber and other stakeholders met with OLS and discussed the companies' concerns about their ability to assess and comply with the Ordinance and OLS's eventual implementing rules given the delayed rulemaking timeline. On September 6, 2024, those companies sent OLS an email reiterating their concerns about the timeline. A true and correct copy of this September 6, 2024 email is attached as **Exhibit 5** to this declaration.

11. OLS held its first meeting with stakeholders on September 11, 2024, during which it provided an overview of the Ordinance. I attended that meeting on behalf of Uber.

12. On September 18, 2024, Uber submitted a pre-rule comment to OLS. Because OLS had yet to issue final rules, Uber's comment asked OLS to adopt (1) a six-month grace period for the enforcement of all requirements in the Ordinance, and (2) for any rules that impose additional substantive requirements, an implementation date at least six months after the date of final rule publication. A true and complete copy of Uber's pre-rule comment is attached as **Exhibit 6** to this declaration.

13. On September 23, 2024, OLS began issuing the Model Rules piecemeal. OLS apologized for its delay in issuing the Model Rules. A true and correct copy of OLS's September 23, 2024 email is attached as **Exhibit 7** to this declaration.

14. The very next day, Uber and other companies followed up with OLS on the request for a grace period, given the ongoing delay in the rulemaking process. A true and correct copy of this email exchange with OLS is attached as **Exhibit 8** to this declaration.

15. OLS subsequently issued other pieces of its Model Rules on October 7, October 18, November 11, and December 10.

16. OLS held meetings to discuss its model rules on September 25, October 23, November 13, and December 11. Either I or a member of my team attended each of these meetings on behalf of Uber.

17.     On October 9, 2024 and December 10, 2024, Uber submitted comments to OLS's Model Rules, as they were rolled out in a piecemeal fashion.  True and correct copies of Uber's October 9 comment (which Uber signed on October 8) and December 10 comment are attached as **Exhibit 9** and **Exhibit 10** to this declaration, respectively.

18.     As the rulemaking process dragged on and the Ordinance's January 1, 2025 effective date grew closer, Uber and other stakeholders continued to be concerned about their ability to timely assess and comply with the Ordinance and OLS rules.  On October 2, 2024 and October 4, 2024, Uber and other stakeholders held meetings with OLS and Deputy Mayor Greg Wong, respectively, during which they expressed their concerns over the implementation timeline.

19.     In total, I or another Uber representative have met with OLS or otherwise engaged with the Agency in connection with the Ordinance and subsequent rulemaking a total of 15 times since the law was enacted, making concerted efforts to (1) suggest reasonable modifications to OLS's Model Rules that would address some of the Ordinance's most problematic and unworkable provisions, and (2) propose that OLS adopt a reasonable grace period to allow companies to come into compliance following OLS's finalization of its implementing rules, particularly given the substantial delays in OLS's rulemaking process.  We were hopeful that these efforts would bear fruit and were committed to seeing that process through.

20.     Since the Ordinance was first announced, Uber has submitted multiple rounds of comments, offered testimony, and met with industry stakeholders and OLS representatives.  Uber has made substantial efforts to avoid the circumstance it presently finds itself in—on the eve of the Ordinance becoming effective, still without the benefit of any final implementing rules from OLS (or a date when they will be finalized), and without necessary fixes from the Agency on many of the issues Uber has identified as clearly problematic and inconsistent with its safety and privacy commitments.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 17th day of December, 2024, at Seattle, Washington.

DocuSigned by:

*Allison Ford*

3D180246634D461...

Allison Ford

# EXHIBIT 1

Good Morning Chair Herbold & Committee Members.

My name is Allison Ford, I am a Public Policy Manager for Uber here in Seattle.
I am calling today regarding the proposed Seattle App-Based Worker Deactivation Rights Ordinance.

I wanted to begin by thanking those Committee members and staff that have met with us regarding this proposed ordinance to hear our feedback and concerns.

Uber shares the values, intentions and motivations behind the proposed ordinance.
At the same time, we do have serious concerns with several provisions in the proposed draft that severely limit our ability to ensure a safe environment for customers, small business partners, and delivery workers.

Our primary concern is to ensure that our platform remains safe to use and that we retain the ability to protect the privacy of individuals that use our platform from exposing their personal information beyond what is necessary to temporarily complete an order.

We take the safety and reliability of our platform seriously and we require the ability to protect access to our platform from users that have displayed behavior or a pattern of behavior that could put the health, safety and economic wellbeing of individuals and small businesses in Seattle at risk.

We are hopeful for the continued opportunity to work with the ordinance sponsors and stakeholders to improve this draft with an outcome that protects workers and provides them with the process they need without sacrificing the safety and privacy of Seattle customers and small businesses.

Thank you for your time.

# EXHIBIT 2

Good Morning Chair Herbold & Committee Members.

My name is Allison Ford, I am a Public Policy Manager for Uber here in Seattle.

I am calling in this morning regarding the proposed App-Based Worker Deactivation Rights Ordinance.

I wanted to start by thanking the bill sponsors for their willingness to collaborate and accept important feedback on the impact this ordinance will have.

While we appreciate the intention of this policy and remain committed to working together to further improve the ordinance from its original draft, we are still concerned about several provisions that could severely limit our ability to ensure a safe environment for customers, small business partners, and delivery workers in Seattle..

Among our top concerns, is the requirement that app-based companies would have to release records that include personally identifiable information of customers and small businesses. This presents serious privacy and safety concerns to the thousands of customers and merchants on our platform in Seattle.

Additionally, the limitations this proposed ordinance puts on our ability to deactivate drivers with low-ratings, red flags in their background checks and potentially allowing drivers to remain on the platform two weeks before they are deactivated - also pose serious safety concerns.

Our primary focus is to ensure that our platform remains safe to use and that we retain the ability to protect the privacy of individuals that use our platform from exposing their personal information beyond what is necessary to temporarily complete an order.

We are hopeful for the continued opportunity to work with the ordinance sponsors and stakeholders to continue to improve this draft with an outcome that protects workers and provides them with the process they need without sacrificing the safety and privacy of Seattle customers and small businesses.

Thank you for your time.

EXHIBIT 3



Allison Ford [redacted] @uber.com>

## POSTPONED: stakeholder meetings re: Seattle's ABW Deactivation Rights Ordinance

Middaugh, Laine [redacted] @seattle.gov>                                    Wed, May 1, 2024 at 9:11 AM
Cc: "Salazar, Diana" [redacted] @seattle.gov>, "Levitas, Kerem" [redacted] @seattle.gov>

Dear Stakeholder,

The Office of Labor Standards is postponing the start of stakeholder meetings to discuss rulemaking for the App-Based Worker Deactivation Rights Ordinance, and **will not be meeting next Wednesday, May 8**. We will contact you with new dates and times as soon as they are scheduled.

As always, you can find more information about the App-Based Worker Deactivation Rights Ordinance on our website, or feel free to contact me if you have questions.

Thank you,

Laine



**Laine Middaugh**

Senior Policy Analyst

City of Seattle, Office of Labor Standards

M: [redacted]

810 Third Avenue, Suite 375

Seattle, WA 98104-1627
s*he/her*

@SeattleLaborStandards| @OLS_SEA | YouTube Seattle Office of Labor Standards - YouTube

*Emails sent to and from the City of Seattle are governed by the Washington Public Records Act, and may be subject to disclosure to a third-party requestor. To learn more please see Chapter 42.56 RCW and Privacy Statement.*

**From:** Middaugh, Laine
**Sent:** Friday, April 26, 2024 4:20 PM

**Cc:** Salazar, Diana <███████@seattle.gov>; Levitas, Kerem <███████@seattle.gov>
**Subject:** RE: upcoming stakeholder meetings re: Seattle's ABW Deactivation Rights Ordinance

Dear Stakeholder,

Thank you for your interest in discussing administrative rules for Seattle's App-Based Worker Deactivation Rights Ordinance. Next week, we will email you with calendar invites including links to all scheduled virtual meetings (dates/times listed below), along with information on how to apply for compensation. All meetings will include Spanish interpretation. Please let me know if you need any other language access or disability accommodations, or no longer want to participate in stakeholder meetings.

**Dates**: Wednesdays May 8, May 22, June 5, and June 26. An additional meeting may be held July 10 if needed.

**Time**: 10AM to 12PM

**Format**: Virtual Meetings

Thank you,

Laine



**Laine Middaugh**

Senior Policy Analyst

City of Seattle, Office of Labor Standards

M: ███████

810 Third Avenue, Suite 375

Seattle, WA 98104-1627

*she/her*

 @SeattleLaborStandards| 🐦 @OLS_SEA | ▶️ Seattle Office of Labor Standards - YouTube

*Emails sent to and from the City of Seattle are governed by the Washington Public Records Act, and may be subject to disclosure to a third-party requestor. To learn more please see Chapter 42.56 RCW and Privacy Statement.*

---

**From:** Middaugh, Laine
**Sent:** Monday, April 8, 2024 2:32 PM
**Cc:** Salazar, Diana <███████@seattle.gov>; Levitas, Kerem <███████@seattle.gov>
**Subject:** upcoming stakeholder meetings re: Seattle's ABW Deactivation Rights Ordinance

Dear Stakeholder,

Seattle's Office of Labor Standards (OLS) is currently seeking workers, hiring entities, advocates, and other key stakeholders in Seattle's app-based work industry to participate in meetings re: administrative rulemaking for the City's new App-Based Worker Deactivation Rights Ordinance (ABWDR).

These meetings will help OLS identify important questions that need to be addressed in the rules and understand key concerns and considerations related to potential content of the rules. These meetings are *not* to voice agreement or disagreement with the law itself or for the purpose of changing the law.

**If you are interested in participating in stakeholder meetings, please complete this form by April 19.** You may be eligible for compensation from the City for your participation if you are not otherwise compensated for time spent (e.g. paid staffer appearing in official capacity).

**Dates**: Wednesdays May 8, May 22, June 5, and June 26. An additional meeting may be held July 10 if needed.

**Time**: 10AM to 12PM

**Format**: Virtual Meetings

Please visit our website for more information about the App-Based Worker Deactivation Rights Ordinance or contact me if you have questions about the rulemaking process.

We look forward to hearing from you,

Laine



**Laine Middaugh**

Senior Policy Analyst

City of Seattle, Office of Labor Standards

M: ▮▮▮▮▮▮▮

810 Third Avenue, Suite 375

Seattle, WA 98104-1627
s*he/her*

 @SeattleLaborStandards|  @OLS_SEA |  YouTube Seattle Office of Labor Standards - YouTube

*Emails sent to and from the City of Seattle are governed by the Washington Public Records Act, and may be subject to disclosure to a third-party requestor. To learn more please see Chapter 42.56 RCW and Privacy Statement.*

EXHIBIT 4



Allison Ford ███████@uber.com>

## Fwd: RESCHEDULED: upcoming stakeholder meetings re: Seattle's ABW Deactivation Rights Ordinance

---------- Forwarded message ---------
From: **Middaugh, Laine** <████████@seattle.gov>
Date: Tue, Aug 20, 2024 at 3:44 PM
Subject: RESCHEDULED: upcoming stakeholder meetings re: Seattle's ABW Deactivation Rights Ordinance
To: Salazar, Diana <████████@seattle.gov>, Kamkar, Negheen <████████@seattle.gov>
Cc: Siu, Lojania <████████@seattle.gov>

Dear Stakeholder,

Seattle's Office of Labor Standards (OLS) is currently seeking workers, hiring entities, advocates, and other key stakeholders in Seattle's app-based work industry to participate in meetings re: administrative rulemaking for the City's new App-Based Worker Deactivation Rights Ordinance (ABWDR). **These meetings were originally scheduled to take place earlier in the year and have been rescheduled to begin next month.**

These meetings will help OLS identify important questions that need to be addressed in the rules and understand key concerns and considerations related to potential content of the rules. These meetings are *not* to voice agreement or disagreement with the law itself or for the purpose of changing the law.

**If you are interested in participating in stakeholder meetings, please complete this form by September 4.** If you already completed this from last Spring, you do not need to complete it again. You may be eligible for compensation from the City for your participation if you are not otherwise compensated for time spent (e.g. paid staffer appearing in official capacity).

**Dates**: Wednesdays September 25, October 9, October 23, and November 13. An optional orientation and overview of the law will be held on Wednesday September 11.

**Time**: 10AM to 12PM

**Format**: Virtual Meetings

Please visit our website for more information about the App-Based Worker Deactivation Rights Ordinance or contact us if you have questions about the rulemaking process. I will be on vacation 8/21 – 9/4, but my colleagues @Kamkar, Negheen and @Salazar, Diana will be available to answer questions while I'm away.


We look forward to hearing from you,

Laine





**Laine Middaugh**

Interim Policy Manager


City of Seattle, Office of Labor Standards

M: █████████████

810 Third Avenue, Suite 375

Seattle, WA 98104-1627
s*he/her*

 @SeattleLaborStandards|  @OLS_SEA |  Seattle Office of Labor Standards - YouTube

*Emails sent to and from the City of Seattle are governed by the Washington Public Records Act, and may be subject to disclosure to a third-party requestor. To learn more please see Chapter 42.56 RCW and Privacy Statement.*


--
**Allison Ford**
Manager of Public Affairs & Policy | *PNW US*
Pronouns: *she/her*

Uber

# EXHIBIT 5



Allison Ford ███████ @uber.com>

## Thank you and follow up - Deactivations rulemaking timeline

████████ @taskrabbit.com>                                                   Fri, Sep 6, 2024 at 10:47 AM
To: ██████ @seattle.gov
Cc: Laine ██████ @seattle.gov>, "Kamkar, Negheen" ████████ @seattle.gov>, "Siu, Lojania" ██████ @seattle.gov>, ███████ @doordash.com>, Allison Ford ████████ @uber.com>, ███████ @instacart.com>, ███████ @johnengber.com>, ████████ @soundviewstrategies.biz>, ██████ @cbestrategic.com>

Diana,

Thank you again for taking the time to meet with us to discuss the <u>App-Based Worker Deactivation Rights Ordinance</u> rulemaking process and timeline. We appreciated the opportunity to learn more about OLS's plans for the stakeholder process, and to share some of our concerns.

We are particularly concerned about the likely short period of time between the finalization of the rules (last stakeholder meeting Nov 13, 2024) and the effective date of the ordinance (Jan 1, 2025), leaving companies with potentially less than 30 days to implement the requirements and associated rules. We hope you will consider our request for a 6 month grace period for enforcement, which would give companies more time to comply.

Additionally, it would be helpful if OLS could provide the draft rules in their entirety up front, rather than sharing it piecemeal before each stakeholder meeting. Having the full text would enable stakeholders to develop and share more thoughtful, detailed feedback earlier in the process.

Finally, it would be helpful to know when rulemaking on the <u>Network Company Fee Ordinance</u> will begin, as it impacts our companies and could overlap with the deactivations rulemaking.

Thank you again for considering our requests. Please let us know if you need any additional information.

████████

--

████████████  █████  ████████████████████████ | **Taskrabbit**
██████ @taskrabbit.com



See available positions here.

EXHIBIT 6

**Uber Technologies, Inc.**
1725 3rd St.
San Francisco, CA 94158

To:        Seattle Office of Labor Standards
          ATTN: Laine Middaugh
          810 Third Avenue, Suite 375
          Seattle, WA 98104
          laborstandards@seattle.gov
Re:        Pre-Rule Comment Regarding Seattle Municipal Code Chapter 8.40
Date:      September 18, 2024

**Introduction**

Uber appreciates the City's interest in enacting a framework that addresses concerns around app-based workers' access to earning opportunities through network companies. Based on Uber's experience working with the Drivers Union of Washington to develop an approach in this area for transportation network company drivers, which approach was approved by the State of Washington,[1] Uber writes to propose an initial set of recommendations regarding the Seattle Office of Labor Standards' ("OLS") development of workable rules to implement Seattle Municipal Code ("SMC") 8.40 (the "Ordinance"), as follows.

**1. Implementation timeline**

The wide-ranging scope and detail of this new law will require significant time and resources for Uber, and likely any covered network company, to build a new system to comply with the requirements. The rulemaking process itself has the potential to create additional operational burdens. We urge OLS to adopt both (i) a six-month grace period for enforcement of all requirements in the Ordinance and, (ii) for any rules that impose additional substantive requirements, an implementation date at least six months after the date of final rule publication. For example, if final rules are published on December 13, 2024, the effective date of any substantive requirements in such rules would be at the earliest June 13, 2025.

**2. Definition of "deactivation"**

Thoughtfully defining what constitutes a deactivation, which triggers myriad requirements and processes as set out in the Ordinance, is critical to ensuring workable regulation in this area.

As a threshold matter, we recommend clarification that a deactivation involves only a blocking of or material restriction in access to a worker platform that occurs after a worker has been activated on such platform. This clarification would bring these meanings of deactivation more clearly in line with the third meaning (changing a worker's status from eligible to ineligible).

We note that workers may lose access to the platform for administrative reasons—for example, the worker has not yet submitted an outstanding document. In that instance, Uber will send a timely notification letting the worker know that they need to submit the document. At the time of that notification, Uber

---

[1] *See* the Deactivation Appeals Process Agreement, executed September 20, 2023 (the "Washington TNC Deactivation Agreement").

expects that the loss of access will be remedied as soon as the worker submits the document. Only if the worker fails to take action to submit the document could the loss of access exceed 48 hours.

From Uber's perspective, this would not require a reconsideration process. Indeed, invoking the challenge procedure in such a case has the potential to inadvertently prolong the worker's loss of access.

Additionally, for these types of issues, it may be impossible for Uber to provide advance notice of the access restriction. For example, if a worker's software requires an update so that the Uber app can function, Uber may not have advance notice of the software issue.

We recommend clarification that access issues that the worker may self-resolve are not "deactivations" that would give rise to the availability of a challenge procedure or the considerable additional requirements related to "deactivations."

Similarly, certain conditions outside Uber's control that give rise to a temporary suspension may ultimately persist beyond 48 hours (e.g., inclement weather). We recommend clarification that in such cases temporary suspensions may continue so long as the network company regularly communicates to the worker the fact of and the reason for the ongoing temporary suspension.

Finally, we recommend clarifying that a "material restriction in access to the worker platform" means ineligibility to receive all or substantially all earning opportunities available through the worker platform.

<u>Suggested language</u>: "Deactivation" means the blocking of an app-based worker's access to the worker platform after activation, changing an app-based worker's status from eligible to accept offers to perform services to ineligible, or other material restriction in access to the worker platform that is effected by a network company after activation. A restriction will be considered material if it results in an app-based worker's ineligibility to receive all or substantially all earning opportunities available through the worker platform.

"Deactivation" does not include:
(i) A restriction in access that is resolvable through unilateral action by an app-based worker, regardless of the ultimate duration of the restriction;
(ii) A restriction in access that is contingent on an app-based worker's compliance with licensing, insurance, or other regulatory requirements; or
(iii) Any other temporary suspensions lasting less than 48 hours when the worker platform is unavailable to an app-based worker due to reasons unrelated to the action or behavior of the app-based worker and that are clearly communicated to the app-based worker at the time of the temporary suspension. Such reasons include but are not limited to: technology, software, or network outages; account access or security issues; routine maintenance; and inclement weather endangering the safety of app-based workers in performing services in Seattle. If the conditions giving rise to such reasons persist beyond 48 hours, the network company must regularly

communicate to the app-based worker the existence of the temporary suspension and the reason for the temporary suspension.

**3. Definition of "egregious misconduct"**

We appreciate the Ordinance's recognition of the various harms that may result from misconduct, including physical, economic, and emotional and psychological harms. We note that a network company may not be subject to "physical harm." We also recommend that any intentional harm, economic or otherwise, constitute egregious misconduct. We therefore propose a simplification that captures these harms while preserving logical consistency by including the endangerment of "safety" rather than "physical safety" and by including intentional "harm" rather than "economic harm."

Additionally, we recommend clarification that a network company's determination of intent to cause harm may be based on the network company's reasonable belief.

<u>Suggested language</u>: Consistent with SMC 8.40, "egregious misconduct" means an action or behavior by an individual app-based worker that: (1) endangers the safety of the customer, or a third person, the network company, or an animal; or (2) intentionally causes harm to the customer, a third person, or the network company; or (3) is threatening, harassing, or abusive to the customer, a third party, or the network company. A finding of intentional harm may be based on the network company's reasonable belief.

**4. Clarification that fraud constitutes "egregious misconduct"**

We recommend clarification that a violation of a network company's fraudulent use policy instituted pursuant to SMC 8.37.090 is conduct that intentionally causes harm to the customer, a third person, and/or the network company.

**5. Determining "at-fault" collisions through challenge procedure**

The Ordinance allows a worker's conduct related to traffic collisions to constitute egregious misconduct only if a worker has accumulated more than three at-fault collisions in the previous three years. We note that whether a collision was at-fault is not knowable based on the DMV records that are used for background checks. Therefore, Uber is unable to determine from results of a background check whether a worker has accumulated at-fault collisions.

In recognition of this reality, the Washington TNC Agreement provides that a collision will not count against a driver (as a moving violation) if, through the account deactivation appeals process, the driver can demonstrate that he or she was not at fault for the collisions.

We recommend clarification that the same process may apply here—specifically, that a network company may require a worker to provide evidence through the challenge procedure that collisions that formed the basis for a deactivation were not "at-fault."

Suggested language: Consistent with SMC 8.40, egregious misconduct shall not include conduct related to non-criminal moving violations as defined by WAC 308-104-160, as amended, or traffic collisions unless the app-based worker has accumulated more than three non-criminal moving violations or at-fault collisions in the previous three years. An app-based worker must demonstrate, through the internal deactivation challenge procedure, that the collisions forming the basis for the app-based worker's deactivation were not at-fault collisions.

## 6. Use of quantitative metrics derived from customer ratings

The ordinance disallows deactivations "based solely on a quantitative metric derived from aggregate customer ratings of an app-based worker's performance." As an initial matter, we note that this language is ambiguous, and recommend clarification that the prohibited policy is one that would deactivate a worker based solely on aggregate customer ratings (i.e., a worker's overall star rating).

At Uber, underlying the metric of aggregate customer ratings is substantive feedback from consumers regarding workers' activity on the platform—and this feedback is often specifically related to safety, fraud, misconduct, and other compliance issues. For this reason, we find that aggregate customer ratings can be an appropriate basis for restricting platform access.

Nevertheless, we recommend clarification that in the event a worker's aggregate customer ratings may not be the sole basis for a deactivation, such a metric may still be used in conjunction with other factors in a network company's determination that a deactivation is warranted.

Suggested language: Any policy that would result in a deactivation based solely on the aggregate quantitative customer ratings of an app-based worker's performance is not reasonably related to the network company's safe and efficient operations. A network company need not ignore aggregate customer ratings of an app-based worker's performance in determining that a deactivation is warranted.

## 7. Timeline for challenge procedure in case of immediate deactivation

The Ordinance requires a network company to respond to a deactivation challenge within 14 days with either evidentiary substantiation for the deactivation, a determination of no violation, or extraordinary circumstances (beyond the network company's control) that necessitate a delayed timeline.

We note that, if a worker is deactivated immediately pursuant to SMC 8.40.050(C), there may be conflicting timeframes for a network company to complete an investigation and respond to a worker's challenge to the deactivation. The Ordinance allows a network company to deactivate a worker due to egregious misconduct, and then complete an investigation within 14 days. If a worker immediately challenges a deactivation, however, the deadline to respond to a challenge may coincide with the network company's completion of the investigation, leaving insufficient time for the network company to compose the requisite response.

We recommend clarification that, in the case of an investigation that follows a deactivation, a network company has 14 days from the completion date of the investigation to prepare and submit a response to a worker's challenge. We also recommend OLS adopt rules similar to those in the Washington TNC Deactivation Agreement, which allows extensions of five calendar days if Uber requires additional time to respond to a worker's challenge.

**8. Certified statements should not identify individuals**

In certain instances the Ordinance requires a written statement certified by an individual at the network company with authority to reinstate the worker. Significant privacy and safety concerns may arise if an individual employee at the network company is named in communications to a worker regarding a deactivation. Accordingly, Uber uses anonymous identifiers such as the name of an internal team within Uber in communications with workers and merchants. Uber urges OLS to appreciate these concerns and clarify that any written statements certified by an individual at the network company with authority to reinstate the worker do not need to identify the individual by name.

Suggested language: Any written statement certified by an individual at the network company with authority to reinstate the app-based worker made pursuant to SMC 8.40.060(B)(4) or SMC 8.40.080(A) need not identify such individual by name to the app-based worker.

**9. Limited record transparency in case of privacy and safety concerns**

The Ordinance generally requires a network company to provide the records relied upon to substantiate deactivation, including further records substantiating a deactivation that come into the network company's possession after a worker is deactivated. The Ordinance allows a network company to anonymize information related to a customer or third party in order to avoid compromising a customer's or third party's safety, and allows for a summary of records if the deactivation is based solely on a complaint.

Summarizing records is critical to maintaining the trust of individuals who report conduct. Even if a deactivation is not based solely on a complaint, rules should allow a network company to provide a summary in any case where providing records themselves could compromise a customer's or third party's safety. Likewise, records that come into a network company's possession after deactivation should not be provided if they could compromise a customer's or third party's safety.

In addition, in the case of fraud, sharing identifying details of all incidents supporting the deactivation decision creates the risk of exploitation of Uber's methods to detect fraud.

In appreciation of these concerns, the Washington TNC Deactivation Agreement both allows for summaries and does not require Uber to share records or identify specific fraudulent conduct if doing so would threaten the integrity of Uber's fraud detection practices.

We urge OLS to adopt rules that allow a network company to summarize records if the information could compromise the customer's or a third party's safety, or could threaten the integrity of Uber's fraud detection practices.

<u>Suggested language</u>: Consistent with SMC 8.40.080(D), if the records substantiating deactivation involve information related to a customer or a third party and the network company reasonably believes that information could compromise the customer or third party's safety, the network company may take measures to anonymize information related to that customer or third party. Such measures may include providing a summary description of the records substantiating the deactivation.

If the records substantiating deactivation involve fraud and the network company reasonably believes that providing records relied upon by the network company to substantiate deactivation could compromise the network company's fraud detection practices, the network company may take measures to maintain the integrity of such practices, including by providing a summary description of the records substantiating deactivation.

Consistent with SMC 8.40.080(B), if further records substantiating a deactivation come into the network company's possession after the app-based worker is deactivated, such records shall be provided to the app based worker as soon as practicable and no later than 14 days from the date of the network company's receipt, unless such records could compromise a customer's or third party's safety.

## 10. Request that OLS publish a notice of rights and required languages for translation

We recommend that OLS create and publish a model notice of rights in English and any other required languages prior to the effective date of the Ordinance. This ensures consistency of information for workers and adequate time for network companies to develop or update the infrastructure necessary to provide the notice of rights as required by the Ordinance.

Relatedly, we recommend that OLS specify the required languages for translation of the deactivation policy, the description of the internal deactivation challenge procedure, and the notice of rights, based on the needs of app-based workers in Seattle.

## 11. Data reporting on an aggregated basis

Reporting disaggregated data imposes an unnecessary burden on network companies and is not necessary to monitor compliance with the Ordinance. We recommend that any data reporting requirements involve only aggregated data, including, as necessary, distributions at defined percentiles.

We look forward to participating in future discussions with OLS on this matter. Thank you for your consideration.

Sincerely,

/s/

Allison Peck

Counsel, Uber Technologies, Inc.

██████@uber.com

EXHIBIT 7



Allison Ford ▇▇▇▇▇ @uber.com>

---

## RE: Seattle App-Based Worker Deactivation rulemaking stakeholder meetings

**Middaugh, Laine** ▇▇▇▇ @seattle.gov>                                    Mon, Sep 23, 2024 at 4:21 PM
Cc: "Salazar, Diana" ▇▇▇▇ @seattle.gov>, "Kamkar, Negheen" ▇▇▇▇ @seattle.gov>, "Siu, Lojania"
▇▇▇▇ @seattle.gov>, "Berry, Star" ▇▇▇▇ @seattle.gov>, "Ruff, Meredith" ▇▇▇▇ @seattle.gov>

Dear Stakeholders,


We look forward to seeing you this Wednesday for our first meeting to discuss rules for Seattle's new App-Based Worker Deactivation Rights Ordinance. The model rules for discussion are attached. For your reference, I have also attached preliminary agendas for future meetings, a summary/cheat sheet for the deactivation law, and slides from our optional orientation meeting held on September 11.


I do apologize for the unexpected delay in sending these materials. We will strive to provide materials one week ahead of future meetings. On Wednesday, we will begin to discuss these model rules, but will also continue to welcome feedback either through email or in future meetings throughout the stakeholder process.


**Upcoming Meeting: Deactivation Stakeholder Meeting #1**

**Date: Wednesday, September 25, 2024**

**Time: 10AM – 12PM PST**

**Meeting Link:**

Join Zoom Meeting

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇


Meeting ID: ▇▇▇▇▇▇


**Zoom Instructions:**

You can access the Zoom app from a smartphone, tablet or computer. When you log in, ensure your name is displayed for OLS records and per diem tracking. Arrive at least 5 minutes early to troubleshoot your video and microphone. Please remain muted until you have been recognized by the facilitator to avoid interruptions.


To provide feedback or to ask a question, you can place your comment in the "Chat" for visible text, or you can "Raise your hand" to be recognized by the facilitator.

To raise your hand, tap **Reactions** 😊 then tap **Raise Hand** ✋.
The host will be notified that you've raised your hand.


***Important***: OLS staff will be taking notes of the stakeholder discussion. Please be mindful that while meetings are neither video recorded nor publicly aired, all meeting notes and materials will be subject to Public Disclosure Requirements. If you

have any questions, please do not hesitate to contact Laine Middaugh or Diana Salazar.

We appreciate your participation and look forward to the meeting.

Thank you,

Laine



**Laine Middaugh**

Interim Policy Manager

City of Seattle, Office of Labor Standards

M: ▮▮▮▮▮▮▮▮▮▮

810 Third Avenue, Suite 375

Seattle, WA 98104-1627
s*he/her*

**f** @SeattleLaborStandards| **𝕏** @OLS_SEA | ▶ YouTube Seattle Office of Labor Standards - YouTube

*Emails sent to and from the City of Seattle are governed by the Washington Public Records Act, and may be subject to disclosure to a third-party requestor. To learn more please see Chapter 42.56 RCW and Privacy Statement.*

**Disclaimer:** *This communication is for informational purposes only and is not for the purpose of providing legal advice, creating an agency decision or establishing an attorney-client relationship between the Office of Labor Standards and the recipient. Any responses to specific questions are based on the facts as we understand them and are not intended to apply to any other situations. If you need legal advice, please consult an attorney.*

---

**From:** Middaugh, Laine
**Sent:** Wednesday, September 11, 2024 12:02 PM
**Cc:** Salazar, Diana <▮▮▮▮▮▮▮▮@seattle.gov>; Kamkar, Negheen <▮▮▮▮▮▮▮▮@seattle.gov>; Siu, Lojania <▮▮▮▮▮▮▮▮@seattle.gov>; Berry, Star <▮▮▮▮▮@seattle.gov>; Ruff, Meredith <▮▮▮▮▮▮▮@seattle.gov>
**Subject:** RE: Seattle App-Based Worker Deactivation rulemaking stakeholder meetings

Dear Stakeholders,

Thank you to all who were able to participate in this morning's optional overview of Seattle's App-Based Worker Deactivation Ordinance. We really appreciate your questions and feedback today and will use your comments to help us shape the structure and content of our upcoming stakeholder meetings. I have attached slides from our presentation for reference.

We look forward to seeing you (on Zoom) for our first rulemaking stakeholder meeting on September 25 and will send more information about that meeting next week, including some model rules for discussion.

Thanks again,

Laine



**Laine Middaugh**

Interim Policy Manager

City of Seattle, Office of Labor Standards

M:

810 Third Avenue, Suite 375

Seattle, WA 98104-1627

s*he/her*

 @SeattleLaborStandards|  @OLS_SEA |  Seattle Office of Labor Standards - YouTube

*Emails sent to and from the City of Seattle are governed by the Washington Public Records Act, and may be subject to disclosure to a third-party requestor. To learn more please see Chapter 42.56 RCW and Privacy Statement.*

---

**From:** Middaugh, Laine
**Sent:** Monday, September 9, 2024 11:50 AM
**Cc:** Salazar, Diana < @seattle.gov>; Kamkar, Negheen < @seattle.gov>; Siu, Lojania < @seattle.gov>
**Subject:** Seattle App-Based Worker Deactivation rulemaking stakeholder meetings

Dear Stakeholders,

Welcome to the App-Based Worker Deactivation rulemaking stakeholder process. You are confirmed as a participant.

Starting this week, the Seattle Office of Labor Standards (OLS) will facilitate one optional overview of the Deactivation Rights Ordinance, followed by four meetings to share information and engage with stakeholders in a virtual setting. Please

reply to this email if you need specific accommodations to access and engage in these virtual meetings, such as language interpretation services.

Following this email, you will receive calendar invites for all meetings with the Zoom log in information. Please RSVP to each item so OLS staff can track attendance. Except for the optional orientation, we will send out agendas with corresponding materials for your review prior to our meetings.

**Dates**: Wednesdays September 25, October 9, October 23, and November 13. An optional orientation and overview of the law will be held on Wednesday September 11.

**Time**: 10AM to 12PM

**Format**: Virtual Meetings

Please visit our website for more information about the App-Based Worker Deactivation Rights Ordinance or contact us if you have questions about the rulemaking process.

We look forward to hearing from you,

Laine



**Laine Middaugh**

Interim Policy Manager

City of Seattle, Office of Labor Standards

M: ▮▮▮▮▮▮

810 Third Avenue, Suite 375

Seattle, WA 98104-1627
s*he/her*

 @SeattleLaborStandards| @OLS_SEA | Seattle Office of Labor Standards - YouTube

*Emails sent to and from the City of Seattle are governed by the Washington Public Records Act, and may be subject to disclosure to a third-party requestor. To learn more please see Chapter 42.56 RCW and Privacy Statement.*

**4 attachments**

 **ABWDR Summary and Cheat Sheet.pdf**
133K

**DRAFT_ ABWDR stakeholder meeting agendas_20240923.pdf**
64K

**ABWDRO Overview Training.pdf**
502K

**9_25_24 Model Rules for ABWDRO.pdf**
269K

EXHIBIT 8



Allison Ford ⬛⬛⬛ @uber.com>

---

## Thank you and follow up - Deactivations rulemaking timeline

Salazar, Diana ⬛⬛⬛ @seattle.gov>                                                    Tue, Sep 24, 2024 at 9:39 AM
To: ⬛⬛⬛ @taskrabbit.com>, "Middaugh, Laine" ⬛⬛⬛ @seattle.gov>
Cc: "Kamkar, Negheen" ⬛⬛⬛ @seattle.gov>, "Siu, Lojania" ⬛⬛⬛,
⬛⬛⬛ @doordash.com>, Allison Ford ⬛⬛⬛ @uber.com>, ⬛⬛⬛ @instacart.com>,
⬛⬛⬛ @johnengber.com>, ⬛⬛⬛ @soundviewstrategies.biz>, ⬛⬛⬛ @cbestrategic.com>

Hi ⬛⬛⬛,

For the Network Company Fee, the contact is Beth Gappert, at Finance and Administrative Services. Her
email is ⬛⬛⬛ @seattle.gov

We did receive an update from FAS, Beth informed us that they will start their implementation soon, network
companies should expect a letter in December with more information about the process. They also plan to
have a landing page on their website with more information in the coming weeks—we shared with their team
that we are getting asked and can link their website in ours as well to communicate. I can send an email to
the entire group that attended the 8/28 meeting.

Thank you for the other feedback, we will be discussing effective date of rules during future stakeholder
meetings.

Diana

---

**From:** ⬛⬛⬛ @taskrabbit.com>
**Sent:** Tuesday, September 24, 2024 8:53 AM
**To:** Salazar, Diana < ⬛⬛⬛ @seattle.gov>; Middaugh, Laine < ⬛⬛⬛ @seattle.gov>;
Kamkar, Negheen < ⬛⬛⬛ @seattle.gov>; Siu, Lojania < ⬛⬛⬛ @seattle.gov>; ⬛⬛⬛
⬛⬛⬛ @doordash.com>; Allison Ford < ⬛⬛⬛ @uber.com>;
⬛⬛⬛ @instacart.com>; ⬛⬛⬛ @johnengber.com>;
⬛⬛⬛ @soundviewstrategies. >; ⬛⬛⬛ @cbestrategic.com>
**Subject:** Re: Thank you and follow up - Deactivations rulemaking timeline

| CAUTION: External Email |
|---|

Diana and Laine,

We wanted to follow up on the below regarding the App-Based Worker Deactivation Rights Ordinance rulemaking process.
We hope you will consider our requests, particularly the 6 month grace period for enforcement.

Thank you in advance for any feedback you can provide.


Best,

█████


On Fri, Sep 6, 2024 at 10:47 AM ████████████████████ @taskrabbit.com> wrote:

Diana,


Thank you again for taking the time to meet with us to discuss the App-Based Worker Deactivation Rights Ordinance rulemaking process and timeline. We appreciated the opportunity to learn more about OLS's plans for the stakeholder process, and to share some of our concerns.


We are particularly concerned about the likely short period of time between the finalization of the rules (last stakeholder meeting Nov 13, 2024) and the effective date of the ordinance (Jan 1, 2025), leaving companies with potentially less than 30 days to implement the requirements and associated rules. We hope you will consider our request for a 6 month grace period for enforcement, which would give companies more time to comply.


Additionally, it would be helpful if OLS could provide the draft rules in their entirety up front, rather than sharing it piecemeal before each stakeholder meeting. Having the full text would enable stakeholders to develop and share more thoughtful, detailed feedback earlier in the process.


Finally, it would be helpful to know when rulemaking on the Network Company Fee Ordinance will begin, as it impacts our companies and could overlap with the deactivations rulemaking.


Thank you again for considering our requests. Please let us know if you need any additional information.


█████


--

████████████████████████████████████████████ | **Taskrabbit**
██████████ @taskrabbit.com

See available positions here.

--

███████████████████████████████████████████████ | **Taskrabbit**
████████████ @taskrabbit.com

See available positions here.

EXHIBIT 9

**Uber Technologies, Inc.**
1725 3rd St.
San Francisco, CA 94158

To:        Seattle Office of Labor Standards
           ATTN: Laine Middaugh
           810 Third Avenue, Suite 375
           Seattle, WA 98104
           laborstandards@seattle.gov

Re:        Comment Regarding Deactivation Rulemaking Stakeholder Meeting #1

Date:      October 8, 2024


**Introduction**

Following the Seattle Office of Labor Standards' ("OLS") Deactivation Rulemaking Stakeholder Meeting #1 on September 25, Uber writes to provide comments on the model rules implementing Seattle Municipal Code ("SMC") 8.40 (the "Ordinance") that OLS proposed during the stakeholder meeting, as follows. Uber appreciates the opportunity to comment on the model rules and looks forward to continued collaboration to ensure that any adopted rules are workable.


**1. App-based worker coverage**

We echo meeting participants' interest in revising the activation language in the model rules. We recommend language clarifying that a worker is covered by the Ordinance with respect to a particular network company after the worker's worker status *with such network company* is activated.

Suggested language: Activation. For the purposes of determining App-based worker coverage under SMC 8.40.030, the app-based worker's worker status must be activated with a network company prior to deactivation by such network company.


**2. Notice of rights**

Language translation may pose a significant operational challenge for network companies. In recognition of this challenge, the Washington Administrative Code requires transportation network companies to provide content to drivers in their preferred language, provided that such language is the preferred language of at least two percent of drivers who use the transportation network company's platform in Washington.[1] We recommend similar rules that require translation only for primary languages that represent at least two percent of workers on the network company platform in Seattle.

Suggested language: 2. Required languages for its translation. A network company shall make the Notice of Rights available to the app-based worker in English, and any language that the network company knows or has reason to know is the primary language of the app-based worker, provided that the primary language has been identified as the primary language of at least two percent of app-based workers who utilize the network company's platform in Seattle. If the Agency creates a model notice of

---

[1] *See* WAC 296-128-99010(31).

rights in English and other languages, the network company shall make the model notice of rights available in all such languages to all app based workers on the worker platform.

**3. Accessible system**

The model rules are ambiguous as to whether an accessible system must display specific numbers and percentages of offers relevant to determining coverage under the Ordinance. If this functionality were required, building it would entail an enormous amount of resources. Uber currently provides receipts and pay disclosures for offers completed or canceled in Seattle and outside Seattle, which together allow a worker to understand when they are covered by the Ordinance. We recommend rules that clarify that the accessible system must provide *information sufficient for a worker to understand* when they are covered by the Ordinance, which is consistent with the Ordinance language.

Uber also provides workers with in-app functionality to call and message network company personnel, but does not display actual phone numbers or email addresses. We recommend rules that do not prescribe the display of phone numbers or email addresses, so long as a worker may call or email network company personnel through the accessible system.

Additionally, as noted in the stakeholder meeting, applying a language requirement to the content that a network company must provide to a worker via the accessible system would pose an impracticable burden, especially in light of the timelines on which the network company must provide these records. The Ordinance imposes a translation requirement only with respect to a network company's deactivation policy and the notice of rights. *We urge OLS to honor the balance that the Ordinance strikes* between requiring certain key content in workers' primary language and appreciating the difficulty of translation of non-static content, by not imposing the language requirement on other contents provided through the accessible system.

<u>Suggested language</u>: 2. Requirements for Accessible System.
  a. The network company shall make the accessible system available via the worker platform.
  b. The network company shall make the accessible system accessible to the app-based worker from any location.
  c. An accessible system shall provide information sufficient for the app-based worker to understand:
  i. Notice of coverage by Chapter 8.40.030.A.1-2;
  ii. The number of offers completed or cancellations with cause in the previous 180 days;
  iii. The number of completed offers or cancellations with cause that involved performing services in Seattle in the previous 180 days;
  iv. The overall percentage of completed offers that involved performing services in Seattle in the previous 180 days;
  v. The app-based worker's receipts and/or payment disclosures for each offer performed or cancelled in the previous 180 days;

vi. The network company's deactivation policy;

vii. The network company's internal deactivation challenge procedure policy; and

viii. The means by which the app-based worker can directly communicate with the network company personnel by phone or email on issues related to the deactivation.

## 4. Fair notice of deactivation policy

Again, we urge OLS to honor the Ordinance's balance around translation requirements. If OLS imposes a translation requirement for the notice of the deactivation policy, as with the language requirement for the notice of rights and accessible system, we recommend rules that reflect similar provisions in the Washington Administrative Code for transportation network companies.

<u>Suggested language</u>: 3. Required languages for its translation. A network company shall make the notice of deactivation policy available to the app-based worker in English, and any language that the network company knows or has reason to know is the primary language of the app-based worker, provided that the primary language has been identified as the primary language of at least two percent of app-based workers who utilize the network company's platform in Seattle.

## 5. Definitions covered in stakeholder meeting #1

Device or application language settings are one of the most reliable ways to understand a user's primary language. We recommend rules clarifying that a network company may rely on such settings in the absence of contrary information provided by the worker.

<u>Suggested language</u>: "Primary language" means the language in which the app-based worker feels most comfortable  communicating. Each network company shall make a good faith effort to determine the primary languages of app-based workers accessing its worker platform. Unless the app-based worker communicates to the network company otherwise, the network company may rely on the settings of the device or application that the app-based worker uses to access the network company's smartphone application or online web portal.

We look forward to participating in future discussions with OLS on this matter. Thank you for your consideration.

Sincerely,

*/s/*

Allison Peck

Counsel, Uber Technologies, Inc.

████████@uber.com

EXHIBIT 10

**Uber Technologies, Inc.**
1725 3rd St.
San Francisco, CA 94158

To:         Seattle Office of Labor Standards
            ATTN: Laine Middaugh
            810 Third Avenue, Suite 375
            Seattle, WA 98104
            laborstandards@seattle.gov

Re:         Comment Regarding Safety Concerns in Deactivation Model Rules

Date:       December 10, 2024

## Introduction

Uber writes to raise serious safety concerns with the model rules implementing Seattle Municipal Code ("SMC") 8.40 (the "Ordinance") that the Seattle Office of Labor Standards ("OLS") proposed in Deactivation Rulemaking Stakeholder Meeting #4 on November 13, 2024. Uber takes allegations of safety-related incidents, including reports of sexual assault and midconduct, extremely seriously. Our policies are designed to protect the privacy of reporters and reduce risk of retaliation. In collaboration with survivor advocate organizations we have adopted best practices for investigating sexual abuse reports, including integrating trauma-informed and survivor-centered approaches that allow us to conduct thorough investigations while mitigating the retraumatization of survivors.

**The requirements proposed in the model rules related to access to records impair Uber's ability to protect the anonymity of reporters and to effectively uphold our policies.**

We raised these concerns previously with the City Council during the legislative process for this ordinance and are disappointed to see the model rules further reduce privacy protections for reporters. Below we have detailed the specific language we find problematic and have provided recommendations that will provide deactivated workers with information sufficient to challenge deactivation decisions, without putting reporters at risk.

Uber will address additional concerns with the model rules in comments to follow.

## Safety and privacy concerns with model rules

The model rules require that a network company provide at least an "approximate geographic location shifted within 1000 feet from the precise location" of an incident. The model rules also require summaries of records and incidents to "be detailed enough such that the app-based worker has sufficient information to understand the incident," and to "include date, time, location and specific details of the incident such as direct comments from the customer or third party."

We have several concerns with these requirements:

- Users who report allegations of sexual misconduct or other serious safety incidents run the risk of retaliation if their personally identifiable information is made public. This may be especially important to users reporting an incident on a delivery platform when it is likely that the worker

made a delivery to their home or place of work. Disclosing specific trip details such as date, time, and location (even if the address is shifted 1,000 feet) as well as a user's "direct comments" will provide workers with a concerningly clear picture of who reported them.

- In general, users who make reports of sexual misconduct do not do so with the expectation that this information may be shared directly with their accuser. This approach may directly violate the privacy and wishes of the survivor. Further, if we were to notify customers of the potential to share this information broadly it could suppress sexual assault reporting, risking the safety of all users.

- Direct comments from reporters and specific addresses are not essential to a driver's dispute of allegations made against them.

### **Recommendations**

**We urge OLS to adopt the following recommendations to address these risks**:

1. **Exclusion for sexual assault, assault, harassment, and additional sensitive incidents**: We recommend excluding deactivations based on sexual assault, sexual misconduct, harassment, and other safety-related egregious misconduct (e.g., trafficking, domestic violence, child abuse, stalking) from the requirements outlined in the model rules listed above. An exclusion for sensitive safety incidents is critical to protecting the anonymity and safety of survivors and to effectively uphold our deactivation policies related to these issues.

2. **Modification of all provisions to maintain privacy for egregious misconduct**: We also recommend removing the requirement that we share direct comments, time of incident, and addresses within 1,000 feet with workers if a deactivation is based on egregious misconduct. Instead, sharing trip date, zip code, and summarized complaints for egregious misconduct deactivations should be permissible.

We are available to discuss these matters with OLS. Thank you for your consideration.

Sincerely,

*/s/*
Allison Peck
Counsel, Uber Technologies, Inc.
███████@uber.com