Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

**CITY OF SEATTLE**

**ORDINANCE** 126878 _____

COUNCIL BILL   120580 _____

AN ORDINANCE relating to app-based worker labor standards; establishing labor standards on deactivation protections for app-based workers working in Seattle; amending Section 3.02.125 of the Seattle Municipal Code; and adding a new Chapter 8.40 to the Seattle Municipal Code.

WHEREAS, the Washington Constitution provides in Article XI, Section 11 that "[a]ny county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws";

NOW, THEREFORE,

**BE IT ORDAINED BY THE CITY OF SEATTLE AS FOLLOWS:**

Section 1. The City Council ("Council") finds and declares that:

A. App-based work is a growing source of income for workers in Seattle and across the country.

B. In the exercise of The City of Seattle's police powers, the City is granted authority to pass regulations designed to protect and promote public health, safety, and welfare.

C. This ordinance protects and promotes public health, safety, and welfare by establishing protections against unwarranted deactivations for app-based workers.

D. Many Seattle workers, including app-based workers, cannot fully participate in the community's dynamic civic life or pursue its myriad educational, cultural, and recreational opportunities because they struggle to meet their households' most basic needs, suffering job insecurity and economic instability.

1    E. Minimum labor standards benefit employers and hiring entities by improving worker

2    performance, reducing worker turnover, and thereby improving productivity and the quality of

3    the services provided by workers, including app-based workers.

4    F. Network companies typically manage large pools of app-based workers by relying on

5    algorithmic management systems, which allow app-based workers to be "assigned, optimized,

6    and evaluated through algorithms and tracked data."[1]

7    G. While algorithmic management may bring certain benefits to network companies,

8    these innovations also generate significant challenges for app-based workers, including

9    information asymmetries and extreme power imbalances between workers and network

10    companies.[2]

11    H. App-based workers often do not have the information they need to know about how

12    they will be evaluated. Algorithms that dictate core aspects of app-based workers' relationship

13    with a network company can change unexpectedly, leading to arbitrary evaluations and

14    unwarranted deactivations.[3]

15    I. App-based workers are subject to network company policies that unilaterally deactivate

16    workers for a variety of reasons without consistent access to a fair process for such deactivations,

17    nor do the workers have access to responsive network company personnel with the power to

18    correct unwarranted deactivations by in-person meetings or telephone.

---

[1] Lee, Min Kyung, Kusbit, Daniel; Metsky, Evan; and Dabbish, Laura. "Working with Machines: The Impact of Algorithmic and Data-Driven Management on Human Workers." *Proceedings of the 33rd Annual ACM Conference on Human Factors in Computing Systems*, April 18, 2015, pp. 1603-1612, https://doi.org/10.1145/2702123.2702548.
[2] Mateescu, Alexandra, and Nguyen, Aiha. "Explainer: Algorithmic Management in the Workplace." *Data & Society*, February 2019, https://datasociety.net/wp-content/uploads/2019/02/DS_Algorithmic_Management_Explainer.pdf.
[3] FTC Policy Statement on Enforcement Related to Gig Work, September 2022, https://www.ftc.gov/system/files/ftc_gov/pdf/Matter%20No.%20P227600%20Gig%20Policy%20Statement.pdf.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    J. App-based workers face potential deactivation for reasons including but not limited to:

2    rejecting too many orders; being unavailable on certain days or times; cancelling offers with

3    cause; being delayed in fulfilling orders; receiving low ratings from consumers; or algorithmic

4    errors.

5    K. Network companies do not consistently apply clear performance expectations or

6    policies for deactivations, and often deactivate app-based workers without explanation or

7    warning.[4]

8    L. App-based workers report being deactivated for low customer ratings, despite the fact

9    that extensive social science research finds that consumer-sourced rating systems are highly

10    likely to be influenced by bias on the basis of factors such as race or ethnicity. App-based

11    workers also report deactivation based on customer harassment and false reports from

12    customers.[5]

13    M. Many network companies do not have processes to substantively reconsider a

14    deactivation based on a case-by-case human review, and have little incentive to put those

15    processes in place.[6]

16    N. A review of network company hiring policies shows that most network companies

17    perform recurring background checks on app-based workers as a condition of continued service.

---

[4] Figueroa, Maria, Guallpa, Ligia; Wolf, Andrew; Tsitouras, Glendy; and Hernàndez; Hildalyn Colón. *Essential but Unprotected: App-based Food Couriers in New York City*, 2021, pp. 31-32, *available at:* https://search.issuelab.org/resource/essential-but-unprotected-app-basedfood-couriers-in-new-york-city.html.
[5] National Employment Law Project, *App-Based Workers Speak: Studies Reveal Anxiety, Frustration, and a Desire for Good Jobs,* October 2021, p. 12, and footnote 23 on p. 18, https://s27147.pcdn.co/wp-content/uploads/App-Based-Workers-Speak-Oct-2021-1.pdf. See also Figueroa et al., *Essential but Unprotected: App-based Food Couriers in New York City*, pp. 31-32.
[6] See, e.g., Soper, Spencer. "Fired by Bot at Amazon: 'It's You Against the Machine'." *Bloomberg*, June 28, 2021. https://www.bloomberg.com/news/features/2021-06-28/fired-by-bot-amazon-turns-to-machine-managers-and-workers-are-losing-out. See also O'Brien, Sara Ashley. "Instacart shoppers demand answers over alleged wrongfully deactivated accounts." *CNN Business*, April 30, 2021. https://www.cnn.com/2021/04/30/tech/instacart-deactivations/index.html.

1  Network companies do not provide clear guidance on background check criteria, methods for

2  evaluating the relationship of criminal history record information to the performance of app-

3  based service, procedures for correcting background check information, or procedures for

4  appealing deactivations based on background check information.

5  O. Unclear and/or inconsistently applied background check policies exacerbate the

6  difficulties app-based workers with criminal history records face when trying to secure or

7  maintain work opportunities.

8  P. The high prevalence of background checks with errors, mismatched identities, and

9  incomplete information, due to scant oversight of background check information provided to the

10  private market, compounds these difficulties.[7]

11  Q. Studies estimate that 50 to 80 percent of FBI criminal records are inaccurate. A

12  common problem is that law enforcement agencies fail to update arrest or charge records with

13  information about the outcome of a case. About a third of felony arrests never lead to a

14  conviction, another third lead to conviction of a different (usually lesser) offense, and other

15  convictions are overturned on appeal, expunged, or sealed.[8]

16  R. The flexibility to determine hours of availability and which offers to accept, reject, or

17  cancel with cause allows workers to make informed decisions on how and when to earn their

18  income without fear of deactivation.

---

[7] Lageson, Sarah Esther. "How Criminal Background Checks Lead to Discrimination Against Millions of Americans." *The Washington Post*, July 10, 2020, https://www.washingtonpost.com/opinions/2020/07/10/personal-data-industry-is-complicit-bad-policing-it-must-be-held-accountable.
[8] Wells, Martin; Cornwell, Erin York; Barrington, Linda; Bigler, Esta; Enayati, Hassan; and Vilhuber, Lars. "Criminal Record Inaccuracies and the Impact of a Record Education Intervention on Employment-Related Outcomes." *U.S. Department of Labor*, January 2, 2020, https://www.dol.gov/sites/dolgov/files/OASP/evaluation/pdf/LRE_WellsFinalProjectReport_December2020.pdf.

1    S. App-based workers who perform services in Seattle are not typically limited to work in

2    the geographic boundaries of Seattle, and often accept offers to perform services in other

3    jurisdictions.

4    T. Access to the records substantiating a network company's decision to deactivate an

5    app-based worker, and access to records of the services performed in Seattle by that app-based

6    worker, are critical for an app-based worker to meaningfully challenge their deactivation and

7    attempt to get reinstated as soon as possible.

8    U. Establishing a reasonable standard for the deactivations of app-based workers as well

9    as the ability to challenge unwarranted deactivations will help ensure that thousands of app-

10    based workers who provide vital services in Seattle will be able to enjoy a measure of job

11    security.

12    V. App-based workers who have protection against unwarranted deactivation will be

13    more likely to remain in their positions over time. Such experienced app-based workers will

14    improve the safety and reliability of the app-based services provided to Seattle customers.

15    W. Minimum labor and compensation standards, including the right to challenge

16    unwarranted deactivations, promote the general welfare, health, and prosperity of Seattle by

17    ensuring that app-based workers have stable incomes and can better support and care for their

18    families and fully participate in Seattle's civic, cultural, and economic life.

19    X. The regulation of app-based workers better ensures that such workers can perform

20    their services in a safe and reliable manner and thereby promotes the welfare of the people and is

21    thus a fundamental governmental function.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    Section 2. A new Chapter 8.40 is added to the Seattle Municipal Code as follows:

2    **Chapter 8.40 APP-BASED WORKER DEACTIVATION RIGHTS**

3    **8.40.010 Short title**

4    This Chapter 8.40 shall constitute the "App-Based Worker Deactivation Rights Ordinance" and

5    may be cited as such.

6    **8.40.020 Definitions**

7    For purposes of this Chapter 8.40:

8    "Accept" means an initial communication from an app-based worker to a network

9    company that the app-based worker intends to perform services in furtherance of an offer,

10   including but not limited to indicating acceptance through the worker platform.

11   "Adverse action" means reducing compensation; garnishing tips or gratuities; temporarily

12   or permanently denying or limiting access to work, incentives, or bonuses; offering less desirable

13   work; terminating; deactivating; threatening; penalizing; retaliating; engaging in unfair

14   immigration-related practices; filing a false report with a government agency; or discriminating

15   against any person for any reason prohibited by Section 8.40.120. "Adverse action" for an app-

16   based worker may involve any aspect of the app-based worker's work, including compensation,

17   work hours, volume, and frequency of offers made available, desirability and compensation rates

18   of offers made available, responsibilities, or other material change in the terms and conditions of

19   work or in the ability of an app-based worker to perform work. "Adverse action" also includes

20   any action by the network company or a person acting on the network company's behalf that

21   would dissuade a reasonable person from exercising any right afforded by this Chapter 8.40.

22   "Agency" means the Office of Labor Standards and any division therein.

1    "Aggrieved party" means an app-based worker or other person who suffers tangible or

2    intangible harm due to a network company's or other person's violation of this Chapter 8.40.

3    "App-based service" means any service in an offer facilitated or presented to an app-

4    based worker by a network company or participation by an app-based worker in any training

5    program required by a network company.

6    "App-based worker" means a person who has entered into an agreement with a network

7    company governing the terms and conditions of use of the network company's worker platform

8    or a person affiliated with and accepting offers to perform services for compensation via a

9    network company's worker platform. For purposes of this Chapter 8.40, at any time, but not

10   limited to, when an app-based worker is logged into the network company's worker platform, the

11   worker is considered an app-based worker.

12   "Application dispatch" means technology that allows customers to directly request

13   dispatch of app-based workers for provision of services and/or allows app-based workers or

14   network companies to accept offers to perform services for compensation and payments for

15   services via the internet using interfaces, including but not limited to website, smartphone, and

16   tablet applications.

17   "Background check" means a request or attempt to obtain, directly or through an agent,

18   a person's conviction record or criminal history record information from the Washington State

19   Patrol or any other source that compiles and maintains such records or information.

20   "Cancellation with cause" has the same meaning as defined in Section 8.37.020.

21   "City" means The City of Seattle.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    "Compensation" means the total amount of payment owed to an app-based worker by

2    reason of performing work facilitated or presented by the network company, including but not

3    limited to network company payments, bonuses, incentives, and tips earned from customers.

4    "Consumer report" has the same meaning as defined in RCW 19.182.010 as amended.

5    "Conviction record" and "criminal history record information" are meant to be

6    consistent with chapter 10.97 RCW as amended, and mean information regarding a final

7    criminal adjudication or other criminal disposition adverse to the subject, including a verdict of

8    guilty, a finding of guilty, or a plea of guilty or nolo contendere. A criminal conviction record

9    does not include any prior conviction that has been the subject of an expungement, vacation of

10   conviction, sealing of the court file, pardon, annulment, certificate of rehabilitation, or other

11   equivalent procedure based on a finding of the rehabilitation of the person convicted, or a prior

12   conviction that has been the subject of a pardon, annulment, or other equivalent procedure

13   based on a finding of innocence. It does include convictions for offenses for which the

14   defendant received a deferred or suspended sentence, unless the adverse disposition has been

15   vacated or expunged.

16   "Criminal history record information" is meant to be consistent with chapter 10.97 RCW

17   as amended.

18   "Customer" means a paying customer and/or recipient of an online order.

19   "Deactivation" means the blocking of an app-based worker's access to the worker

20   platform, changing an app-based worker's status from eligible to accept offers to perform

21   services to ineligible, or other material restriction in access to the worker platform that is effected

22   by a network company. Deactivation" does not include temporary suspensions lasting less than

23   48 hours when the worker platform is unavailable to an app-based worker due to reasons

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    unrelated to the action or behavior of the app-based worker and that are clearly communicated to

2    the app-based worker at the time of the temporary suspension. Such reasons include but are not

3    limited to: technology, software, or network outages; account access or security issues; routine

4    maintenance; and inclement weather endangering the safety of app-based workers in performing

5    services in Seattle.

6         "Director" means the Director of the Office of Labor Standards or the Director's

7    designee.

8         "Discrimination," "discriminate," and/or "discriminatory act" have the same meaning as

9    defined in Section 14.04.030.

10        "Driver record" means an abstract of a person's driving record as described in RCW

11   46.52.130 as amended.

12        "Egregious misconduct" means an action or behavior by an individual app-based worker

13   that: (1) endangers the physical safety of the customer, or a third person, the network company,

14   or an animal; or (2) intentionally causes economic harm to the customer, a third person, or the

15   network company; or (3) is threatening, harassing, or abusive to the customer, a third party, or

16   the network company. "Egregious misconduct" includes but is not limited to conduct that occurs

17   outside of an app-based worker's provision of app-based services or use of the network

18   company's worker platform if the network company can prove by a preponderance of the

19   evidence that the conduct directly relates to the app-based worker's fitness to provide app-based

20   services or to use the network company's worker platform.

21             1. "Egregious misconduct" includes but is not limited to the following conduct in

22   connection with an app-based worker's provision of app-based services or use of the network

23   company's worker platform: assault, sexual assault, sexual harassment, communicating with a

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1     minor for immoral purposes, sexual conduct as defined in RCW 7.105.010 as amended, unlawful

2     harassment as defined in RCW 7.105.010 as amended, hate crimes, racial slurs, unlawful

3     imprisonment as defined in RCW 9A.40.040 as amended, kidnapping, unlawful possession of a

4     firearm, solicitation of any sexual act, registration as a sex offender, stalking, theft, fraud,

5     robbery, burglary, money laundering, animal cruelty, cybercrimes as defined in chapter 9A.90

6     RCW as amended, prostitution, driving-related crimes pursuant to RCW 46.61.500 through

7     46.61.540 as amended, failing to maintain a valid state driver's license, and other conduct that

8     would constitute a Class A felony offense under Title 9 or 9A RCW as amended.

9             2. Egregious misconduct shall not include conduct related to non-criminal moving

10    violations as defined by WAC 308-104-160, as amended, or traffic collisions unless the app-

11    based worker has accumulated more than three non-criminal moving violations or at-fault

12    collisions in the previous three years.

13             3. The Director may issue rules further defining what constitutes economic harm

14    or egregious misconduct.

15       "Extraordinary circumstances" means circumstances beyond the network company's

16    control that will materially influence the determination of whether a deactivation was warranted.

17    Extraordinary circumstances may include, but are not limited to, a pending criminal

18    investigation.

19       "Franchise" has the same meaning as defined in RCW 19.100.010 as amended.

20       "Front pay" means the compensation an app-based worker would earn or would have

21    earned if reinstated to their former position.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    "Hearing Examiner" means the official appointed by the City Council and designated as

2    the Hearing Examiner under Chapter 3.02 or that person's designee (e.g., Deputy Hearing

3    Examiner or Hearing Examiner Pro Tem).

4    "Incentive" means a sum of money paid to an app-based worker in addition to the

5    guaranteed minimum network company payment for an offer, upon completion of specific tasks

6    presented by the network companies, including but not limited to completing performance of a

7    certain number of offers, completing performance of a certain number of consecutive offers,

8    completing performance of an offer subject to a price multiplier or variable pricing policy,

9    making oneself available to accept offers in a particular geographic location during a specified

10    period of time, or recruiting new app-based workers.

11    "Network company" means an organization, whether a corporation, partnership, sole

12    proprietor, or other form, operating in Seattle, that uses an online-enabled application or

13    platform, such as an application dispatch system, to connect customers with app-based workers,

14    present offers to app-based workers through a worker platform, and/or facilitate the provision of

15    services for compensation by app-based workers.

16    1. The term "network company" includes any such entity or person acting directly

17    or indirectly in the interest of a network company in relation to the app-based worker.

18    2. The term "network company" excludes:

19    a. An entity offering services that enable individuals to schedule

20    appointments with and/or process payments to users, when the entity neither engages in

21    additional intermediation of the relationships between parties to such transactions nor engages in

22    any oversight of service provision;

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1      b. An entity operating digital advertising and/or messaging platforms,

2   when the entity neither engages in intermediation of the payments or relationships between

3   parties to resulting transactions nor engages in any oversight of service provision;

4      c. An entity that meets the definition of "transportation network company"

5   as defined by RCW 46.04.652 as amended; or

6      d. An entity that meets the definition of "for-hire vehicle company" or

7   "taxicab association" as defined in Section 6.310.110.

8      A company that meets the definition of network company in this Section 8.40.020 and

9   does not fall within any of the exclusions contained in this Section 8.40.020 is subject to this

10   Chapter 8.40. Network companies include marketplace network companies, as defined by

11   Section 8.37.020.

12      "Offer" means one or more online orders presented to an app-based worker as one

13   opportunity to perform services for compensation that the app-based worker may accept or

14   reject.

15      1. An opportunity to perform services for compensation includes but is not limited

16   to an opportunity described via a worker platform as a shift, a period of time to be spent engaged

17   in service provision, a continuous period of time in which the app-based worker must make

18   themself available to perform services, or any other continuous period of time when the worker

19   is not completely relieved of the duty to perform the service(s), and such a period of time shall

20   be considered as one offer.

21      2. The term "offer" includes pre-scheduled offers and on-demand offers, as

22   defined in Section 8.37.020.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1       "Online order" means an order for services that is placed through an online-enabled

2  application or platform, such as an application dispatch system, and that is facilitated by a

3  network company or presented by a network company for its own benefit. The Director may

4  issue rules further defining the definition of "online order" and the types of transactions excluded

5  from this definition. The term "online order" does not include the following transactions:

6       1. Sale or rental of products or real estate;

7       2. Payment in exchange for a service subject to professional licensure that has been listed

8  by the Director pursuant to Section 8.37.020;

9       3. Payment in exchange for services wholly provided digitally;

10      4. Payment in exchange for creative services or works;

11      5. Transportation network company (TNC) dispatched trips. For purposes of this Section

12  8.40.020, "TNC dispatched trips" means the provision of transportation by a driver for a

13  passenger through the use of a transportation network company's application dispatch system;

14  and

15      6. Transportation provided by taxicabs or for-hire vehicles, as defined in Chapter 6.310.

16      "Operating in Seattle" means, with respect to a network company, facilitating or

17  presenting offers to provide services for compensation using an online-enabled application or

18  platform, such as an application dispatch system, to any app-based worker, where such services

19  are performed in Seattle.

20      "Paying customer" means a person or entity placing an online order via a network

21  company's online-enabled application or platform.

22      "Perform services in Seattle" means activities, conducted by an app-based worker in

23  furtherance of an offer, that occur in whole or in part within Seattle.

*Template last revised December 2, 2021*

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1        1. The term "perform services in Seattle" includes any time spent on a

2  commercial stop in Seattle that is related to the provision of delivery or other services associated

3  with an offer.

4        2. The term "perform services in Seattle" does not include stopping for refueling,

5  stopping for a personal meal or errands, or time spent in Seattle solely for the purpose of

6  travelling through Seattle from a point of origin outside Seattle to a destination outside Seattle

7  with no commercial stops in Seattle.

8        "Rate of inflation" means 100 percent of the annual average growth rate of the bi-

9  monthly Seattle-Tacoma-Bellevue Area Consumer Price Index for Urban Wage Earners and

10  Clerical Workers, termed CPI-W, for the 12-month period ending in August; provided that the

11  percentage increase shall not be less than zero.

12        "Respondent" means the network company or any person who is alleged or found to have

13  committed a violation of this Chapter 8.40.

14        "Successor" means any person to whom a network company quitting, selling out,

15  exchanging, or disposing of a business sells or otherwise conveys in bulk and not in the ordinary

16  course of the network company's business, a major part of the property, whether real or personal,

17  tangible or intangible, of the network company's business. For purposes of this definition,

18  "person" means an individual, receiver, administrator, executor, assignee, trustee in bankruptcy,

19  trust, estate, firm, corporation, business trust, partnership, limited liability partnership, company,

20  joint stock company, limited liability company, association, joint venture, or any other legal or

21  commercial entity.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    "Tips" means a verifiable sum to be presented by a customer as a gift or gratuity in

2    recognition of some service performed for the customer by the app-based worker receiving the

3    tip.

4    "Traffic infraction" means a violation of state law or administrative regulation, or local

5    law, ordinance, regulation, or resolution, relating to traffic including parking, standing, stopping,

6    and pedestrian offenses, which is not classified as a criminal offense, consistent with RCW

7    46.63.020 as amended. A "traffic infraction" includes any offense committed in another

8    jurisdiction that includes the elements of any offense designated as a traffic infraction consistent

9    with RCW 46.63.020 as amended.

10    "Unwarranted deactivation" means a deactivation that does not comply with Section

11    8.40.050.

12    "Worker platform" means the worker-facing application dispatch system software or any

13    online-enabled application service, website, or system, used by an app-based worker, that

14    enables the arrangement of services for compensation.

15    "Written" or "in writing" means a printed or printable communication in physical or

16    electronic format including a communication that is transmitted through email, text message, or a

17    computer system, or is otherwise sent or maintained electronically, including via the worker

18    platform.

19    **8.40.030 App-based worker coverage**

20    A. For the purpose of this Chapter 8.40, except for Section 8.40.100, covered app-based

21    workers are limited to those for whom:

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1          1. During the previous 180 days, at least 25 percent of their completed offers, or

2    offers cancelled with cause, involved performing services in Seattle for a covered network

3    company; or

4          2. The app-based worker's deactivation is related to an incident or incidents that

5    occurred while performing services in Seattle for a covered network company.

6        B. For the purpose of Section 8.40.100, an app-based worker is covered by Section

7    8.40.100 if the app-based worker performs services in Seattle facilitated or presented by a

8    network company covered by this Chapter 8.40.

9        C. An app-based worker who is a covered employee under Chapter 14.20 for a covered

10    network company, or a covered employee under Chapter 14.20 for a customer of an online order,

11    is not a covered app-based worker under this Chapter 8.40.

12    **8.40.040 Network company coverage**

13        A. For the purposes of this Chapter 8.40, covered network companies are limited to those

14    that facilitate work performed by 250 or more app-based workers worldwide regardless of where

15    those workers perform work, including but not limited to chains, integrated enterprises, or

16    franchises associated with a franchise or network of franchises that facilitate work performed by

17    250 or more app-based workers worldwide in aggregate.

18        B. To determine the number of app-based workers performing work for the current

19    calendar year:

20          1. The calculation is based upon the average number per calendar week of app-

21    based workers who worked for compensation during the preceding calendar year for any and all

22    weeks during which at least one app-based worker worked for compensation.

1    2. For network companies that did not have any app-based workers during the

2    preceding calendar year, the number of app-based workers counted for the current calendar year

3    is calculated based upon the average number per calendar week of app-based workers who

4    worked for compensation during the first 90 calendar days of the current year in which the

5    network company engaged in business.

6    3. If a network company quits, sells out, exchanges, or disposes the network

7    company's business, or the network company's business is otherwise acquired by a successor,

8    the number of app-based workers hired for the current calendar year for the successor network

9    company is calculated based upon the average number per calendar week of app-based workers

10    who worked for compensation during the first 90 calendar days of the current year in which the

11    successor network company engaged in business.

12    4. All app-based workers who worked for compensation shall be counted,

13    including but not limited to:

14    a. App-based workers who are not covered by this Chapter 8.40;

15    b. App-based workers who worked in Seattle; and

16    c. App-based workers who worked outside Seattle.

17    C. Separate entities that form an integrated enterprise shall be considered a single

18    network company under this Chapter 8.40. Separate entities will be considered an integrated

19    enterprise and a single network company under this Chapter 8.40 where a separate entity controls

20    the operation of another entity. The factors to consider in making this assessment include but are

21    not limited to:

22    1. Degree of interrelation between the operations of multiple entities;

23    2. Degree to which the entities share common management;

3. Centralized control of labor relations;

4. Degree of common ownership or financial control over the entities; and

5. Use of a common brand, trade, business, or operating name.

**8.40.050 Deactivation requirements**

A. A network company shall adopt the following measures prior to deactivating an app-based worker, except as provided in subsections 8.40.050.C and 8.40.050.D:

1. Fair notice of deactivation policy. A network company must inform the app-based worker in writing of the network company's deactivation policy, defining what constitutes a violation that may result in deactivation. The network company's written deactivation policy must be specific enough for an app-based worker to understand what constitutes a violation and how to avoid violating the policy. The deactivation policy must be available to the app-based worker in English and any language that the network company knows or has reason to know is the primary language of the app-based worker. The deactivation policy must be accessible to the app-based worker at least three years after deactivation. The Director may issue rules governing the form and description of the deactivation policy, the manner of its distribution, and required languages for its translation.

2. Reasonable policy. The policy that may lead to a deactivation must be reasonably related to the network company's safe and efficient operations. Examples of policies that are not reasonably related to the network company's safe and efficient operations include, but are not limited to:

a. Any rule or policy that would result in a deactivation based on an app-based worker's availability to work or number of hours worked, consistent with subsection 8.37.080.A.1;

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1          b. Any policy that would result in a deactivation based on an app-based

2    worker's acceptance or rejection of any individual offer, any types of offers, or any number or

3    proportion of offers, consistent with subsection 8.37.080.A.2;

4          c. Any policy that would result in a deactivation based on an app-based

5    worker's cancellation of an offer with cause, consistent with subsection 8.37.080.C;

6          d. Any policy that would result in a deactivation based on an app-based

7    worker contacting the network company;

8          e. Any policy that would result in a deactivation based solely on a

9    quantitative metric derived from aggregate customer ratings of an app-based worker's

10   performance;

11          f. Any policy that would result in a deactivation based on statements by an

12   app-based worker regarding compensation and/or working conditions made to customers, other

13   app-based workers, network companies, the media, public officials, and/or the public;

14          g. Any policy that would result in a deactivation based on an app-based

15   worker asserting their legal rights, whether in court or via procedures provided by any local,

16   state, or federal agency; and

17          h. Any policy that would deactivate a worker based on the results of a

18   background check, consumer report, driver record, or record of traffic infractions, except in cases

19   of egregious misconduct or where required by other applicable law.

20          3. Investigation. A network company must conduct a fair and objective

21   investigation prior to deactivating an app-based worker. The investigation must be sufficiently

22   thorough to justify the deactivation and demonstrate an unbiased and neutral view of facts

23   collected. If the app-based worker does not participate in the investigation or provide relevant

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1  information, the network company may complete the investigation based on available sources of

2  information.

3          4. Confirmation of violation. The network company must demonstrate by a

4  preponderance of the evidence that the alleged violation of the network company's policy or rule

5  occurred.

6          5. Consistent application. The network company must apply the rule or policy,

7  and penalty for violations, in a consistent manner.

8          6. Proportionate penalty. The penalty of deactivation must be reasonably related

9  to the offense, and account for mitigating circumstances, such as the app-based worker's past

10  work history with the network company.

11      B. Deactivation of an app-based worker will be considered unwarranted if the action is

12  intended to or results in discrimination or a discriminatory act.

13      C. Subject to the provisions of this Section 8.40.050 and rules issued by the Director, a

14  network company may immediately deactivate an app-based worker if such action is required to

15  comply with any applicable court order or local, state, or federal laws or regulations, or where an

16  app-based worker has engaged in egregious misconduct.

17      D. In the case of allegations of egregious misconduct, the network company may

18  deactivate the app-based worker before completing an investigation. Except in extraordinary

19  circumstances, the investigation shall not take longer than 14 days. If the investigation is delayed

20  due to extraordinary circumstances, the network company must provide the app-based worker

21  with written notice that the investigation is delayed, the reason(s) for the delay, and the date on

22  which the completion of the investigation is anticipated.

*Template last revised December 2, 2021*

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

**8.40.060 Right to challenge deactivation**

A. A network company shall not subject an app-based worker to unwarranted deactivation.

B. An app-based worker shall have a right to challenge the worker's deactivation through an internal deactivation challenge procedure established by the network company.

1. A network company shall create an internal deactivation challenge procedure that shall be available to the app-based worker immediately upon notice of their deactivation and up to 90 days after the app-based worker's receipt of notice.

2. The internal deactivation challenge procedure must be available to the app-based worker in writing, in a format that is readily accessible to the app-based worker, and in English and any language that the network company knows or has reason to know is the primary language of the app-based worker. The written policy describing the deactivation challenge procedure shall be available to the app-based worker at least three years after deactivation. The Director may issue rules governing the form and content of the policy describing the deactivation challenge procedure, the manner of its distribution, and required languages for its translation.

3. A network company shall review and respond to an app-based worker's challenge to deactivation within 14 days of receiving a challenge.

4. A network company's response to a worker's challenge to deactivation must include a written statement certified by an individual at the network company with authority to reinstate the app-based worker. The written statement must include one of the following:

a. Evidentiary substantiation of the deactivation pursuant to Section 8.40.080, and substantive responses to questions or claims made by the app-based worker in challenging the deactivation;

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1            b. Any extraordinary circumstances necessitating a delayed timeline for

2    response, and an anticipated date for a response either substantiating the deactivation or

3    reinstating the app-based worker; or

4            c. A determination that the worker did not violate the network company's

5    deactivation policy and therefore must be reinstated on the platform.

6        C. In addition to pursuing an internal challenge to deactivation pursuant to subsection

7    8.40.060.B, an app-based worker shall have a right to file a complaint with the Agency or bring a

8    civil action for violations of the requirements of this Chapter 8.40 upon receiving the network

9    company's initial response to the internal challenge, or 14 days after initiating a challenge,

10   whichever comes earlier. An app-based worker may pursue all avenues of relief available

11   thereafter within three years of the alleged violation, or as tolled pursuant to subsection

12   8.40.150.C.

13       D. An app-based worker shall have a right to challenge their deactivation and pursue all

14   avenues of relief available to them regardless of the geographic location of the incidents leading

15   to the network company's decision to deactivate the app-based worker.

16   **8.40.070 Notice of deactivation**

17       A. Except as provided under subsection 8.40.070.C, a network company shall provide an

18   app-based worker with notice of deactivation 14 days in advance of the deactivation, as well as

19   upon the effective date of deactivation. The notice of deactivation shall include a written

20   statement of the following:

21           1. The reasons for deactivation; including the network company's policy that was

22   violated, pursuant to Section 8.40.050, and the specific incident or pattern of incidents that

23   violated the deactivation policy;

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1            2. The effective date of deactivation;

2            3. Any and all records relied upon to substantiate deactivation, pursuant to Section

3 8.40.080;

4            4. The length of the deactivation;

5            5. A description of the steps an app-based worker can take to remedy the

6 deactivation;

7            6. The app-based worker's right to challenge such deactivation under this Chapter

8 8.40;

9            7. The network company's process for challenging a deactivation, pursuant to

10 subsection 8.40.060.B, including the available methods of contact for an app-based worker to

11 initiate a challenge; and

12            8. Any other items pursuant to Director's Rules.

13       B. The network company shall provide notice of deactivation in a form and manner

14 designated by the Agency. The Agency may create and distribute a model notice of deactivation

15 in English and other languages as provided by rules issued by the Director. However, network

16 companies are responsible for providing app-based workers with the notice of deactivation

17 required by this subsection 8.40.070, regardless of whether the Agency has created and

18 distributed a model notice of deactivation.

19       C. For deactivations involving egregious misconduct, pursuant to subsection 8.40.050.C,

20 the network company shall provide an app-based worker with the notice of deactivation no later

21 than the effective date of deactivation.

*Template last revised December 2, 2021*

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    **8.40.080 Access to records substantiating deactivation**

2    A. Pursuant to subsection 8.40.080.C, upon notice of deactivation, a network company

3    shall provide an app-based worker with the records relied upon by the network company to

4    substantiate deactivation, unless contrary to local, state, or federal law. These records shall

5    include but not be limited to the date, time, and location of all incidents supporting the

6    deactivation decision, a copy of the evidence the network company considered in the

7    deactivation decision, and a certified statement from an individual at the network company with

8    authority to reinstate the app-based worker, attesting that these are true and accurate records to

9    the individual's knowledge.

10    B. If further records substantiating a deactivation come into the network company's

11    possession after the app-based worker is deactivated, such records shall be provided to the app-

12    based worker as soon as practicable and no later than 14 days from the date of the network

13    company's receipt.

14    C. If an app-based worker challenges a deactivation pursuant to subsection 8.40.060.B,

15    all records of that challenge and any responses must be provided to the worker within 14 days of

16    each submittal or response.

17    D. If the records substantiating deactivation involve information related to a customer or

18    a third party and the network company reasonably believes that information could compromise

19    the customer or third party's safety, the network company may take measures to anonymize

20    information related to that customer or third party. If a complaint from a customer or third party

21    is the sole basis for a deactivation, the network company may provide a summary description of

22    the records substantiating the deactivation. The Director may issue rules regarding the measures

1   taken to summarize the records substantiating the deactivation or anonymize information related

2   to a customer or third party.

3   E. Network companies covered by Chapter 8.37 shall establish an accessible system for

4   app-based workers to access their receipts for each offer performed or cancelled, pursuant to

5   subsection 8.37.070.B. Network companies shall make this system available to the app-based

6   worker via smartphone application or online web portal. This accessible system shall be

7   available to an app-based worker at least three years after deactivation.

8   F. Network companies shall retain the records required by this Section 8.40.080 for a

9   period of three years.

10   G. If a network company fails to disclose adequate records to the app-based worker as

11   required under this Section 8.40.080, there shall be a presumption, rebuttable by clear and

12   convincing evidence, that the network company violated this Chapter 8.40 for the relevant

13   periods and for each app-based worker for whom records were not disclosed in a timely manner.

14   This presumption is substantive and necessary to effectuate the other rights provided in this

15   Chapter 8.40.

16   **8.40.090 Affirmative production of records**

17   A. A network company shall affirmatively transmit to the Agency such records as

18   required by rules issued by the Director, on at least a quarterly basis until July 1, 2026, and at

19   least every six months thereafter. The Director shall have the authority to require such

20   aggregated or disaggregated records deemed necessary, appropriate, or convenient to administer,

21   evaluate, and enforce the provisions of this Chapter 8.40. The Director may issue rules requiring

22   that aggregated records be produced as a distribution at defined percentiles. The Director may

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    issue data production rules of general applicability as well as rules specific to on-demand

2    network companies, as defined in Section 8.37.020.

3                    1. Records for production may include:

4                            a. Records regarding the number of deactivations initiated by a network

5    company;

6                            b. Records regarding the reasons for deactivation most commonly referred

7    to, such as the rule or policy violated by the app-based worker;

8                            c. The number of app-based workers challenging their deactivation and the

9    forum in which they are pursuing a challenge;

10                           d. The number of app-based workers reinstated after deactivation, length

11    of deactivation prior to reinstatement, and length of service prior to deactivation;

12                           e. The network company's deactivation policy;

13                           f. The network company's internal deactivation challenge procedure,

14    pursuant to Section 8.40.060, including the available methods of contact for an app-based worker

15    to initiate a challenge; and

16                           g. Any other records that the Director determines are material and

17    necessary to effectuate the purposes of this Chapter 8.40.

18                    2. The Director shall issue rules governing the submission format, security, and

19    privacy protocols relating to the submission of network company records, to the extent permitted

20    by law.

21    **8.40.100 Notice of rights**

22        A. Network companies shall affirmatively provide each app-based worker with a written

23    notice of rights established by this Chapter 8.40. The Agency may create and distribute a model

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    notice of rights in English and other languages. If the Agency creates a model notice of rights,

2    network companies shall affirmatively provide such notice according to the schedule outlined in

3    subsection 8.40.100.A.1. However, network companies are responsible for providing app-based

4    workers with the notice of rights required by this Section 8.40.100, in a form and manner

5    sufficient to inform app-based workers of their rights under this Chapter 8.40, regardless of

6    whether the Agency has created and distributed a model notice of rights.

7            1. Network companies shall affirmatively provide each app-based worker with the

8    written notice of rights within one month of the effective date of this Chapter 8.40. For each app-

9    based worker hired by the network company after this date, network companies shall provide the

10    notice of rights within 24 hours of the first completed offer that involved performing services in

11    Seattle, facilitated or presented by the network company.

12            2. For each app-based worker, network companies shall provide the notice of

13    rights no less than annually.

14        B. The notice of rights shall provide information on:

15            1. The right to challenge an unwarranted deactivation through a network

16    company's internal deactivation challenge procedure and/or through other avenues pursuant to

17    Section 8.40.060, subject to coverage eligibility under subsection 8.40.030.A;

18            2. The policy describing the deactivation challenge procedure pursuant to

19    subsection 8.40.060.B;

20            3. The right to 14 days' notice of an impending deactivation, except in the case of

21    egregious misconduct;

22            4. The right to access any and all records relied upon by the network company to

23    substantiate deactivation, pursuant to Section 8.40.080;

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1           5. The right to be protected from retaliation for exercising in good faith the rights

2    protected by this Chapter 8.40; and

3           6. The right to file a complaint with the Agency consistent with Section 8.40.130

4    or bring a civil action for violation of the requirements of this Chapter 8.40.

5        C. Network companies shall provide the notice of rights required by subsection

6    8.40.100.B in an electronic format that is readily accessible to the app-based worker. The notice

7    of rights shall be made available to the app-based worker via smartphone application, email, or

8    online web portal, in English and any language that the network company knows or has reason to

9    know is the primary language of the app-based worker. The Director may issue rules governing

10   the form and content of the notice of rights, the manner of its distribution, and required

11   languages for its translation.

12       D. Network companies other than marketplace network companies shall establish an

13   accessible system for app-based workers to understand their eligibility to challenge a

14   deactivation, pursuant to subsection 8.40.030.A. This system shall be available to the app-based

15   worker via smartphone application or online web portal. This system shall be available to an app-

16   based worker, at least three years after deactivation. The Director may issue rules defining

17   reasonable criteria or requirements for this system to ensure that app-based workers have

18   sufficient information to understand when they are covered by the entirety of this Chapter 8.40,

19   including but not limited to notice of coverage by this Chapter 8.40, the number of offers

20   completed or cancellations in the previous 180 days, the number of completed offers or

21   cancellations that involved performing services in Seattle in the previous 180 days, the overall

22   percentage of completed offers that involved performing services in Seattle in the previous 180

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    days, and the app-based worker's receipts and/or payment disclosures for each offer performed

2    or cancelled in the previous 180 days, pursuant to subsection 8.37.070.B and Section 14.34.060.

3          E. Marketplace network companies shall provide sufficient information for app-based

4    workers to understand their eligibility to challenge a deactivation upon request by the app-based

5    worker. Marketplace network companies shall make this information available upon request to

6    the app-based worker via email. Marketplace network companies shall make this information

7    available to an app-based worker, at least three years after deactivation. The Director may issue

8    rules defining reasonable criteria or requirements to ensure that app-based workers have

9    sufficient information to understand when they are covered by the entirety of this Chapter 8.40,

10   including but not limited to notice of coverage by this Chapter 8.40, the number of offers

11   completed or cancellations in the previous 180 days, the number of completed offers or

12   cancellations that involved performing services in Seattle in the previous 180 days, and the

13   overall percentage of completed offers that involved performing services in Seattle in the

14   previous 180 days.

15   **8.40.110 Network company records**

16         A. Network companies shall retain records that document compliance with this Chapter

17   8.40 for each app-based worker, including, at a minimum, a compliance file for each

18   deactivation. The Director may issue rules governing the format of the records needed to

19   constitute compliance of this Section 8.40.110. The Director may also issue rules governing the

20   form, format, and content of the compliance file for each deactivation. This compliance file may

21   include:

22               1. The deactivation notice provided to the app-based worker, pursuant to Section

23   8.40.070;

1                 2. Date of completion of investigation;

2                 3. Whether the deactivation involved egregious misconduct and, if so, the

3  egregious misconduct at issue;

4                 4. Whether the deactivation investigation includes extraordinary circumstances,

5  pursuant to subsection 8.40.050.B and, if so, the extraordinary circumstances at issue;

6                 5. Number of offers completed in the 180 days prior to deactivation notice;

7                 6. Number of completed offers that involved performing services in Seattle in the

8  180 days prior to deactivation notice;

9                 7. Date of deactivation challenge according to the network company's internal

10  deactivation challenge procedure;

11                 8. All responses to an app-based worker regarding a deactivation challenge,

12  pursuant to subsections 8.40.060.B and 8.40.080.C; and

13                 9. Any other records pursuant to Director's Rules.

14      B. Network companies shall retain the records required by subsection 8.40.110.A for a

15  period of three years.

16      C. If a network company fails to retain adequate records required under subsection

17  8.40.110.A, there shall be a presumption, rebuttable by clear and convincing evidence, that the

18  network company violated this Chapter 8.40 for the relevant periods and for each app-based

19  worker for whom records were not retained. This presumption is substantive and necessary to

20  effectuate the rights provided in this Chapter 8.40.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    **8.40.120 Retaliation prohibited**

2        A. No network company or any other person acting on behalf of the network company

3    shall interfere with, restrain, deny, or attempt to deny the exercise of any right protected under

4    this Chapter 8.40.

5        B. No network company or any other person shall take any adverse action against any

6    person because the person has exercised in good faith the rights protected under this Chapter

7    8.40. Such rights include, but are not limited to, the right to make inquiries about the rights

8    protected under this Chapter 8.40; the right to inform others about their rights under this Chapter

9    8.40; the right to inform the person's network company, the person's legal counsel, a union or

10    similar organization, or any other person about an alleged violation of this Chapter 8.40; the right

11    to file an oral or written complaint with the Agency or bring a civil action for an alleged

12    violation of this Chapter 8.40; the right to cooperate with the Agency in its investigations of this

13    Chapter 8.40; the right to testify in a proceeding under or related to this Chapter 8.40; the right to

14    refuse to participate in an activity that would result in a violation of city, state, or federal law;

15    and the right to oppose any policy, practice, or act that is unlawful under this Chapter 8.40.

16        C. No network company or any other person shall communicate to a person exercising

17    rights protected in this Section 8.40.120, directly or indirectly, the willingness to inform a

18    government worker that the person is not lawfully in the United States, or to report, or to make

19    an implied or express assertion of a willingness to report, suspected citizenship or immigration

20    status of an app-based worker or family member of an app-based worker to a federal, state, or

21    local agency because the app-based worker has exercised a right under this Chapter 8.40.

22        D. It shall be a rebuttable presumption of retaliation if a network company or any other

23    person takes an adverse action against a person within 90 days of the person's exercise of rights

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    protected in this Section 8.40.120. The network company may rebut the presumption with clear

2    and convincing evidence that the adverse action was taken for a permissible purpose.

3        E. Proof of retaliation under this Section 8.40.120 shall be sufficient upon a showing that

4    a network company or any other person has taken an adverse action against a person and the

5    person's exercise of rights protected in this Section 8.40.120 was a motivating factor in the

6    adverse action, unless the network company can prove that the action would have been taken in

7    the absence of such protected activity.

8        F. The protections afforded under this Section 8.40.120 shall apply to any person who

9    mistakenly but in good faith alleges violations of this Chapter 8.40.

10       G. A complaint or other communication by any person triggers the protections of this

11   Section 8.40.120 regardless of whether the complaint or communication is in writing or makes

12   explicit reference to this Chapter 8.40.

13   **8.40.125 Rulemaking authority**

14   The Director is authorized to promulgate, revise, or rescind rules and regulations deemed

15   necessary, appropriate, or convenient to administer, evaluate, and enforce the provisions of this

16   Chapter 8.40 pursuant to Chapter 3.02, providing affected entities with due process of law and

17   in conformity with the intent and purpose of this Chapter 8.40. Any rules promulgated by the

18   Director shall have the force and effect of law and may be relied on by network companies, app-

19   based workers, and other parties to determine their rights and responsibilities under this Chapter

20   8.40.

21   **8.40.130 Enforcement power and duties**

22       A. Except as provided in subsection 8.40.130.B, on or after January 1, 2025, the Agency

23   shall have the power to administer and enforce this Chapter 8.40 and shall have such powers and

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1   duties in the performance of these functions as are defined in this Chapter 8.40 and otherwise

2   necessary and proper in the performance of the same and provided for by law.

3          B. The Agency shall not have the power to enforce subsections 8.40.050.A.3,

4   8.40.050.A.4, 8.40.050.A.5, 8.40.050.A.6, 8.40.050.B, 8.40.050.C, and 8.40.060.A until June 1,

5   2027. Starting June 1, 2027, the Agency may enforce subsections 8.40.050.A.3, 8.40.050.A.4,

6   8.40.050.A.5, 8.40.050.A.6, 8.40.050.B, 8.40.050.C, and 8.40.060.A. This subsection 8.40.130.B

7   does not limit the ability of an app-based worker to seek other avenues of relief for violations of

8   those subsections.

9   **8.40.140 Violation**

10  The failure of any respondent to comply with any requirement imposed on the respondent under

11  this Chapter 8.40 is a violation.

12  **8.40.150 Investigation**

13         A. Except as provided in subsection 8.40.130.B, the Agency shall have the power to

14  investigate any violations of this Chapter 8.40 by any respondent. The Agency may prioritize

15  investigations of workforces that are vulnerable to violations of this Chapter 8.40. The Agency

16  may initiate an investigation pursuant to Director's Rules, including but not limited to situations

17  when the Director has reason to believe that a violation has occurred or will occur, or when

18  circumstances show that violations are likely to occur within a class of network companies or

19  businesses because either the workforce contains significant numbers of app-based workers who

20  are vulnerable to violations of this Chapter 8.40, or the workforce is unlikely to volunteer

21  information regarding such violations. An investigation may also be initiated through the receipt

22  by the Agency of a report or complaint filed by an app-based worker, or any other person.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1           B. An app-based worker or other person may report to the Agency any suspected

2  violation of this Chapter 8.40. The Agency shall encourage reporting pursuant to this Section

3  8.40.150 by taking the following measures:

4           1. The Agency shall keep confidential, to the maximum extent permitted by

5  applicable laws, the name and other identifying information of the app-based worker or person

6  reporting the violation. However, with the authorization of such person, the Agency may disclose

7  the name of the app-based worker or other person and identifying information as necessary to

8  enforce this Chapter 8.40 or for other appropriate purposes.

9           2. The Agency may require the network company to post or otherwise notify other

10  app-based workers working for the network company that the Agency is conducting an

11  investigation. The network company shall provide the notice of investigation in a form, place,

12  and manner designated by the Agency. The Agency shall create the notice of investigation in

13  English and other languages.

14           3. The Agency may certify the eligibility of eligible persons for "U" Visas under

15  the provisions of 8 U.S.C. § 1184(p) and 8 U.S.C. § 1101(a)(15)(U). This certification is subject

16  to applicable federal law and regulations, and Director's Rules.

17      C. The Agency's investigation shall commence within three years of the alleged

18  violation. To the extent permitted by law, the applicable statute of limitations for civil actions is

19  tolled during any investigation under this Chapter 8.40 and any administrative enforcement

20  proceeding under this Chapter 8.40 based upon the same facts. For purposes of this Chapter 8.40:

21           1. The Agency's investigation begins on the earlier date of when the Agency

22  receives a complaint from a person under this Chapter 8.40, or when the Agency provides notice

23  to the respondent that an investigation has commenced under this Chapter 8.40.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1        2. The Agency's investigation ends when the Agency issues a final order

2    concluding the matter and any appeals have been exhausted; the time to file any appeal has

3    expired; or the Agency notifies the respondent in writing that the investigation has been

4    otherwise resolved.

5        D. The Agency's investigation shall be conducted in an objective and impartial manner.

6        E. The Director may apply by affidavit or declaration in the form allowed under RCW

7    5.50.050 as amended to the Hearing Examiner for the issuance of subpoenas requiring a network

8    company to produce the records required by Section 8.40.080 or 8.40.110, or for the attendance

9    and testimony of witnesses, or for the production of documents required to be retained under

10   Section 8.40.080 or 8.40.110, or any other document relevant to the issue of whether any app-

11   based worker or group of app-based workers received the information or other benefits required

12   by this Chapter 8.40, and/or to whether a network company has violated any provision of this

13   Chapter 8.40. The Hearing Examiner shall conduct the review without hearing as soon as

14   practicable and shall issue subpoenas upon a showing that there is reason to believe that: a

15   violation has occurred; a complaint has been filed with the Agency; or circumstances show that

16   violations are likely to occur within a class of businesses because the workforce contains

17   significant numbers of app-based workers who are vulnerable to violations of this Chapter 8.40,

18   the workforce is unlikely to volunteer information regarding such violations, or the Agency has

19   gathered preliminary information indicating that a violation may have occurred.

20       F. A network company that fails to comply with the terms of any subpoena issued under

21   subsection 8.40.150.E in an investigation by the Agency under this Chapter 8.40 before the

22   issuance of a Director's Order issued pursuant to subsection 8.40.160.C may not use such

1  records in any appeal to challenge the correctness of any determination by the Agency of

2  liability, damages owed, or penalties assessed.

3        G. In addition to other remedies, the Director may refer any subpoena issued under

4  subsection 8.40.150.E to the City Attorney to seek a court order to enforce any subpoena.

5        H. Where the Director has reason to believe that a violation has occurred, the Director

6  may order any appropriate temporary or interim relief to mitigate the violation or maintain the

7  status quo pending completion of a full investigation or hearing, including but not limited to a

8  deposit of funds or bond sufficient to satisfy a good faith estimate of compensation, interest,

9  damages, and penalties due. A respondent may appeal any such order in accordance with Section

10  8.40.180.

11  **8.40.160 Findings of fact and determination**

12        A. Except when there is an agreed-upon settlement, the Director shall issue a written

13  determination with findings of fact resulting from the investigation and statement of whether a

14  violation of this Chapter 8.40 has or has not occurred based on a preponderance of the evidence

15  before the Director.

16        B. If the Director determines that there is no violation of this Chapter 8.40, the Director

17  shall issue a "Determination of No Violation" with notice of an app-based worker's or other

18  person's right to appeal the decision, pursuant to Director's Rules.

19        C. If the Director determines that a violation of this Chapter 8.40 has occurred, the

20  Director shall issue a "Director's Order" that shall include a notice of violation identifying the

21  violation or violations.

22        1. The Director's Order shall state with specificity the amounts due under this

23  Chapter 8.40 for each violation, including payment of unpaid compensation, liquidated damages,

1    civil penalties, penalties payable to aggrieved parties, fines, and interest pursuant to Section

2    8.40.170.

3            2. The Director's Order may specify that civil penalties and fines due to the

4    Agency can be mitigated for respondent's timely payment of remedy due to an aggrieved party

5    pursuant to subsection 8.40.170.A.4.

6            3. The Director's Order may specify that civil penalties and fines are due to the

7    aggrieved party rather than due to the Agency.

8            4. The Director's Order may direct the respondent to take such corrective action

9    as is necessary to comply with the requirements of this Chapter 8.40, including but not limited to

10   monitored compliance for a reasonable time period.

11           5. The Director's Order shall include notice of the respondent's right to appeal the

12   decision pursuant to Section 8.40.180.

13   **8.40.167 Navigation program**

14           A. The Agency may establish a navigation program that provides intake, information,

15   outreach, and/or education relating to the provisions and procedures of this Chapter 8.40. The

16   range of information provided by the navigation program may include, but is not limited to:

17           1. General court information, such as:

18                   a. Information on court procedures for filing civil actions in a court of

19   competent jurisdiction; and

20                   b. Information on obtaining translation and interpretation services;

21           2. General arbitration information, such as:

22                   a. Information on arbitration procedures for filing arbitration claims; and

23                   b. Information on obtaining translation and interpretation services;

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1      3. A list of organizations that can be used to identify attorneys;

2      4. Organizations providing outreach and education, and/or legal assistance, to

3  app-based workers;

4      5. Information about classifying workers as employees or independent

5  contractors; and

6      6. As determined by the Director, additional information related to the provisions

7  of this Chapter 8.40, other workplace protections, or other resources for resolving workplace

8  issues.

9      B. The navigation program shall not include legal advice from the Agency. However, if

10  the Agency provides information to an app-based worker about a community organization

11  through the navigation program, the community organization is not precluded from providing

12  legal advice.

13  **8.40.170 Remedies**

14      A. The payment of unpaid compensation, liquidated damages of up to twice the amount

15  of unpaid compensation, civil penalties, penalties payable to aggrieved parties, fines, and interest

16  provided under this Chapter 8.40 is cumulative and is not intended to be exclusive of any other

17  available remedies, penalties, fines, and procedures.

18      1. The amounts of all civil penalties, penalties payable to aggrieved parties, and

19  fines contained in this Section 8.40.170 shall be increased annually to reflect the rate of inflation

20  and calculated to the nearest cent on January 1 of each year thereafter. The Agency shall

21  determine the amounts and file a schedule of such amounts with the City Clerk.

22      2. If a violation is ongoing when the Agency receives a complaint or opens an

23  investigation, the Director may order payment of unpaid compensation plus interest that accrues

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1  after receipt of the complaint or after the investigation opens and before the date of the Director's

2  Order.

3  　　　　　3. Interest shall accrue from the date the unpaid compensation was first due at 12

4  percent annum, or the maximum rate permitted under RCW 19.52.020 as amended.

5  　　　　　4. If there is a remedy due to an aggrieved party, the Director may waive part or

6  all civil penalties and fines due to the Agency based on timely payment of the full remedy due to

7  the aggrieved party.

8  　　　　　　a. The Director may waive the total amount of civil penalties and fines due

9  to the Agency if the Director determines that the respondent paid the full remedy due to the

10 aggrieved party within ten days of service of the Director's Order.

11 　　　　　　b. The Director may waive half the amount of civil penalties and fines due

12 to the Agency if the Director determines that the respondent paid the full remedy due to the

13 aggrieved party within 15 days of service of the Director's Order.

14 　　　　　　c. The Director shall not waive any amount of civil penalties and fines due

15 to the Agency if the Director determines that the respondent has not paid the full remedy due to

16 the aggrieved party after 15 days of service of the Director's Order.

17 　　　　　5. When determining the amount of liquidated damages, civil penalties, penalties

18 payable to aggrieved parties, and fines due under this Section 8.40.170 for a settlement

19 agreement or Director's Order, including but not limited to the mitigation of civil penalties and

20 fines due to the Agency for timely payment of remedy due to an aggrieved party under

21 subsection 8.40.170.A.4, the Director may consider:

22 　　　　　　a. The total amount of unpaid compensation, liquidated damages,

23 penalties, fines, and interest due;

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1          b. The nature and persistence of the violations;

2          c. The extent of the respondent's culpability;

3          d. The substantive or technical nature of the violations;

4          e. The size, revenue, and human resources capacity of the respondent;

5          f. The circumstances of each situation;

6          g. The amount of penalties in similar situations; and

7          h. Pursuant to rules that the Director may issue, other factors that are

8    material and necessary to effectuate the terms of this Chapter 8.40.

9          B. A respondent found to be in violation of this Chapter 8.40 shall be liable for full

10    payment of unpaid compensation due plus interest in favor of the aggrieved party for the period

11    of deactivation under the terms of this Chapter 8.40, and other equitable relief.

12          1. If the precise amount of unpaid compensation cannot be determined due to a

13    respondent's failure to produce records or if a respondent produces records in a manner or form

14    which makes timely determination of the amount of unpaid compensation impracticable, the

15    Director may:

16          a. Determine unpaid compensation as a matter of just and reasonable

17    inference, including the use of representative evidence such as testimony or other evidence from

18    representative employees or other aggrieved parties establishing violations for a class of

19    employees or aggrieved parties; or

20          b. Assess a daily amount for unpaid compensation plus interest in favor of

21    the aggrieved party in a minimum amount of at least the equivalent of payment for eight hours of

22    work at the "hourly minimum wage" rate for Schedule 1 employers under Chapter 14.19.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    2. For a first violation of this Chapter 8.40, the Director may assess liquidated

2    damages in an additional amount of up to twice the unpaid compensation.

3    3. For subsequent violations of this Chapter 8.40, the Director shall assess an

4    amount of liquidated damages in an additional amount of twice the unpaid compensation.

5    4. For purposes of establishing a first and subsequent violation for this Section

6    8.40.170, the violation must have occurred within ten years of the settlement agreement or

7    Director's Order.

8    C. A respondent found to be in violation of this Chapter 8.40 for retaliation under Section

9    8.40.120 shall be subject to any appropriate relief at law or equity including, but not limited to,

10    reinstatement of the aggrieved party, front pay in lieu of reinstatement with full payment of

11    unpaid compensation plus interest in favor of the aggrieved party under the terms of this Chapter

12    8.40, and liquidated damages in an additional amount of up to twice the unpaid compensation.

13    The Director also shall order the imposition of a penalty payable to the aggrieved party of up to

14    $6,230.88.

15    D. The Director is authorized to assess civil penalties for a violation of this Chapter 8.40

16    and may specify that civil penalties are due to the aggrieved party rather than due to the Agency.

17    1. For a first violation of this Chapter 8.40, the Director may assess a civil penalty

18    of up to $622.85 per aggrieved party.

19    2. For a second violation of this Chapter 8.40, the Director shall assess a civil

20    penalty of up to $1,245.71 per aggrieved party, or an amount equal to ten percent of the total

21    amount of unpaid compensation, whichever is greater.

*Template last revised December 2, 2021*

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    3. For a third or any subsequent violation of this Chapter 8.40, the Director shall

2    assess a civil penalty of up to $6,230.88 per aggrieved party, or an amount equal to ten percent of

3    the total amount of unpaid compensation, whichever is greater.

4    4. For purposes of this subsection 8.40.170.D, a violation is a second, third, or

5    subsequent violation if the respondent has been a party to one, two, or more than two settlement

6    agreements, respectively, stipulating that a violation has occurred; and/or one, two, or more than

7    two Director's Orders, respectively, have issued against the respondent in the ten years preceding

8    the date of the violation; otherwise, it is a first violation.

9    E. The Director is authorized to assess fines for a violation of this Chapter 8.40 and may

10    specify that fines are due to the aggrieved party rather than due to the Agency. The Director is

11    authorized to assess fines as follows:

| Violation | Fine |
| --- | --- |
| Failure to comply with deactivation requirements under Section 8.40.050 | $622.85 per aggrieved party |
| Failure to provide app-based worker with an internal deactivation challenge procedure under Section 8.40.060 | $622.85 per aggrieved party |
| Failure to provide app-based worker with a notice of deactivation under Section 8.40.070 | $622.85 per aggrieved party |
| Failure to provide app-based worker with records relied upon by the network company to substantiate the deactivation under Section 8.40.080 | $622.85 per aggrieved party |
| Failure to provide certified statement attesting to records provided to substantiate deactivation under Section 8.40.080 | $622.85 per aggrieved party |
| Failure to provide written notice of rights under Section 8.40.100 | $622.85 per aggrieved party |
| Failure to retain network company records for three years under subsections 8.40.110.B | $622.85 per missing record |
| Failure to provide notice of investigation to app-based workers under subsection 8.40.150.B.2 | $622.85 per aggrieved party |
| Failure to post or distribute public notice of failure to comply with final order under subsection 8.40.210.A.1 | $622.85 per aggrieved party |

1    The maximum amount that may be imposed in fines in a one-year period for each type of

2    violation listed above is $6,230.88 per aggrieved party.

3        F. A respondent that willfully hinders, prevents, impedes, or interferes with the Director

4    or Hearing Examiner in the performance of their duties under this Chapter 8.40 shall be subject

5    to a civil penalty of not less than $1,245.71 and not more than $6,230.88.

6        G. In addition to the unpaid compensation, penalties, fines, liquidated damages, and

7    interest, the Agency may assess against the respondent in favor of the City the reasonable costs

8    incurred in enforcing this Chapter 8.40, including but not limited to reasonable investigation

9    costs and attorneys' fees. The Director may issue rules on the amounts and contributing factors

10    for assessing reasonable investigation costs and is strongly encouraged to assess such costs in

11    favor of the City to support the Agency's implementation of this Chapter 8.40.

12        H. A respondent that is the subject of a settlement agreement stipulating that a violation

13    shall count for debarment, or a final order for which all appeal rights have been exhausted, shall

14    not be permitted to bid, or have a bid considered, on any City contract until such amounts due

15    under the final order have been paid in full to the Director. If the respondent is the subject of a

16    final order two times or more within a five-year period, the network company shall not be

17    allowed to bid on any City contract for two years. This subsection 8.40.170.H shall be construed

18    to provide grounds for debarment separate from, and in addition to, those contained in Chapter

19    20.70 and shall not be governed by that chapter; provided, that nothing in this subsection

20    8.40.170.H shall be construed to limit the application of Chapter 20.70. The Director shall notify

21    the Director of Finance and Administrative Services of all respondents subject to debarment

22    under this subsection 8.40.170.H.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    **8.40.180 Appeal period and failure to respond**

2         A. An app-based worker or other person who claims an injury as a result of an alleged

3    violation of this Chapter 8.40 may appeal the Determination of No Violation, pursuant to

4    Director's Rules.

5         B. A respondent may appeal the Director's Order, including all remedies issued pursuant

6    to Section 8.40.170, by requesting a contested hearing before the Hearing Examiner in writing

7    within 15 days of service of the Director's Order. If a respondent fails to appeal the Director's

8    Order within 15 days of service, the Director's Order shall be final. If the last day of the appeal

9    period so computed is a Saturday, Sunday, or federal or City holiday, the appeal period shall run

10   until 5 p.m. on the next business day.

11   **8.40.190 Appeal procedure and failure to appear**

12        A. Contested hearings shall be conducted pursuant to the procedures for hearing

13   contested cases contained in Section 3.02.090 and the rules adopted by the Hearing Examiner for

14   hearing contested cases. The hearing shall be conducted de novo and the Director shall have the

15   burden of proving by a preponderance of the evidence that the violation or violations occurred.

16   Upon establishing such proof, the remedies and penalties imposed by the Director shall be

17   upheld unless it is shown that the Director abused discretion. Failure to appear for a contested

18   hearing shall result in an order being entered finding that the respondent committed the violation

19   stated in the Director's Order. For good cause shown and upon terms the Hearing Examiner

20   deems just, the Hearing Examiner may set aside an order entered upon a failure to appear.

21        B. In all contested cases, the Hearing Examiner shall enter an order affirming, modifying,

22   or reversing the Director's Order.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    **8.40.200 Appeal from Hearing Examiner order**

2        A. The respondent may obtain judicial review of the decision of the Hearing Examiner by

3    applying for a Writ of Review in the King County Superior Court within 30 days from the date

4    of the decision in accordance with the procedure set forth in chapter 7.16 RCW as amended,

5    other applicable law, and court rules.

6        B. The decision of the Hearing Examiner shall be final and conclusive unless review is

7    sought in compliance with this Section 8.40.200.

8    **8.40.210 Failure to comply with final order**

9        A. If a respondent fails to comply within 30 days of service of any settlement agreement

10   with the Agency, or with any final order issued by the Director or the Hearing Examiner for which

11   all appeal rights have been exhausted, the Agency may pursue, but is not limited to, the following

12   measures to secure compliance:

13           1. The Director may require the respondent to post or distribute public notice of

14   the respondent's failure to comply in a form and manner determined by the Agency.

15           2. The Director may refer the matter to a collection agency. The cost to the City

16   for the collection services will be assessed as costs, at the rate agreed to between the City and the

17   collection agency, and added to the amounts due.

18           3. The Director may refer the matter to the City Attorney for the filing of a civil

19   action in a court of competent jurisdiction to enforce such order or to collect amounts due. In the

20   alternative, the Director may seek to enforce a settlement agreement, Director's Order, or a final

21   order of the Hearing Examiner under Section 8.40.190.

22           4. The Director may request that the City's Department of Finance and

23   Administrative Services deny, suspend, refuse to renew, or revoke any business license held or

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1    requested by the network company or person until such time as the network company complies

2    with the remedy as defined in the settlement agreement or final order. The City's Department of

3    Finance and Administrative Services shall have the authority to deny, refuse to renew, or revoke

4    any business license in accordance with this subsection 8.40.210.A.4.

5         B. No respondent that is the subject of a final order issued under this Chapter 8.40 shall

6    quit business, sell out, exchange, convey, or otherwise dispose of the respondent's business or

7    stock of goods without first notifying the Agency and without first notifying the respondent's

8    successor of the amounts owed under the final order at least three business days before such

9    transaction. At the time the respondent quits business, or sells out, exchanges, or otherwise

10   disposes of the respondent's business or stock of goods, the full amount of the remedy, as

11   defined in a final order issued by the Director or the Hearing Examiner, shall become

12   immediately due and payable. If the amount due under the final order is not paid by respondent

13   within ten days from the date of such sale, exchange, conveyance, or disposal, the successor shall

14   become liable for the payment of the amount due; provided, that the successor has actual

15   knowledge of the order and the amounts due or has prompt, reasonable, and effective means of

16   accessing and verifying the fact and amount of the order and the amounts due. The successor

17   shall withhold from the purchase price a sum sufficient to pay the amount of the full remedy.

18   When the successor makes such payment, that payment shall be deemed a payment upon the

19   purchase price in the amount paid, and if such payment is greater in amount than the purchase

20   price the amount of the difference shall become a debt due such successor from the network

21   company.

**8.40.220 Debt owed The City of Seattle**

A. All monetary amounts due under the Director's Order shall be a debt owed to the City and may be collected in the same manner as any other debt in like amount, which remedy shall be in addition to all other existing remedies; provided, that amounts collected by the City for unpaid compensation, liquidated damages, penalties payable to aggrieved parties, or front pay shall be held in trust by the City for the aggrieved party and, once collected by the City, shall be paid by the City to the aggrieved party.

B. If a respondent fails to appeal a Director's Order to the Hearing Examiner within the time period set forth in subsection 8.40.180.B, the Director's Order shall be final, and the Director may petition the Seattle Municipal Court, or any court of competent jurisdiction, to enforce the Director's Order by entering judgment in favor of the City finding that the respondent has failed to exhaust its administrative remedies and that all amounts and relief contained in the order are due. The Director's Order shall constitute prima facie evidence that a violation occurred and shall be admissible without further evidentiary foundation. Any certifications or declarations authorized under RCW 5.50.050 as amended containing evidence that the respondent has failed to comply with the order or any parts thereof, and is therefore in default, or that the respondent has failed to appeal the Director's Order to the Hearing Examiner within the time period set forth in subsection 8.40.180.B, and therefore has failed to exhaust the respondent's administrative remedies, shall also be admissible without further evidentiary foundation.

C. If a respondent fails to obtain judicial review of an order of the Hearing Examiner within the time period set forth in subsection 8.40.200.A, the order of the Hearing Examiner shall be final, and the Director may petition the Seattle Municipal Court to enforce the Director's

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1 Order by entering judgment in favor of the City for all amounts and relief due under the order of

2 the Hearing Examiner. The order of the Hearing Examiner shall constitute conclusive evidence

3 that the violations contained therein occurred and shall be admissible without further evidentiary

4 foundation. Any certifications or declarations authorized under RCW 5.50.050 as amended

5 containing evidence that the respondent has failed to comply with the order or any parts thereof,

6 and is therefore in default, or that the respondent has failed to avail itself of judicial review in

7 accordance with subsection 8.40.200.A, shall also be admissible without further evidentiary

8 foundation.

9      D. In considering matters brought under subsections 8.40.220.B and 8.40.220.C, the

10 Seattle Municipal Court may include within its judgment all terms, conditions, and remedies

11 contained in the Director's Order or the order of the Hearing Examiner, whichever is applicable,

12 that are consistent with the provisions of this Chapter 8.40.

13 **8.40.230 Private right of action**

14      A. Any person or class of persons that suffers an injury as a result of a violation of this

15 Chapter 8.40, or is the subject of prohibited retaliation under Section 8.40.120, may bring a civil

16 action in a court of competent jurisdiction against the network company or other person violating

17 this Chapter 8.40 and, upon prevailing, may be awarded reasonable attorney fees and costs and

18 such legal or equitable relief as may be appropriate to remedy the violation including, without

19 limitation: the payment of any unpaid compensation plus interest due to the person; liquidated

20 damages in an additional amount of up to twice the unpaid compensation; a penalty payable to

21 the aggrieved party of up to $6,230.88 if the aggrieved party was subject to prohibited

22 retaliation; and other civil penalties and fines payable to any aggrieved party, consistent with

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1  Section 8.40.170. Interest shall accrue from the date the unpaid compensation was first due at 12

2  percent per annum, or the maximum rate permitted under RCW 19.52.020 as amended.

3      B. For purposes of this Section 8.40.230, "person" includes any entity a member of which

4  has suffered an injury or retaliation, or any other individual or entity acting on behalf of an

5  aggrieved party that has suffered an injury or retaliation.

6      C. For purposes of determining membership within a class of persons entitled to bring an

7  action under this Section 8.40.230, two or more app-based workers are similarly situated if they:

8          1. Performed services in Seattle for the same network company or network

9  companies, whether concurrently or otherwise, at some point during the applicable statute of

10  limitations period;

11          2. Allege one or more violations that raise similar questions as to liability; and

12          3. Seek similar forms of relief.

13      D. For purposes of subsection 8.40.230.C, app-based workers shall not be considered

14  dissimilar solely because:

15          1. The app-based workers' claims seek damages that differ in amount; or

16          2. The job titles of or other means of classifying the app-based workers differ in

17  ways that are unrelated to their claims.

18      E. An order issued by a court may include a requirement for a network company to

19  submit a compliance report to the court and/or to the Agency.

20  **8.40.233 Waiver**

21  Any waiver by an individual of any provisions of this Chapter 8.40 shall be deemed contrary to

22  public policy and shall be void and unenforceable.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

**8.40.235 Encouragement of more generous policies**

A. Nothing in this Chapter 8.40 shall be construed to discourage or prohibit a network company from the adoption or retention of minimum standards for deactivation policies for app-based workers that are more generous than the minimum standards required by this Chapter 8.40.

B. Nothing in this Chapter 8.40 shall be construed as diminishing the obligation of the network company to comply with any contract or other agreement providing more generous minimum standards for deactivation policies for app-based workers than required by this Chapter 8.40.

**8.40.240 Other legal requirements—Effect on other laws**

A. The provisions of this Chapter 8.40:

1. Supplement and do not diminish or replace any other basis of liability or requirement established by statute or common law;

2. Shall not be construed to preempt, limit, or otherwise affect the applicability of any other law, regulation, requirement, policy, or standard for minimum deactivation requirements, or other protections to app-based workers; and

3. Shall not be interpreted or applied so as to create any power or duty in conflict with federal or state law.

B. This Chapter 8.40 shall not be construed to preclude any person aggrieved from seeking judicial review of any final administrative decision or order made under this Chapter 8.40 affecting such person. Nothing in this Section 8.40.240 shall be construed as restricting the right of an app-based worker or other person to pursue any other remedies at law or equity for violation of the app-based worker's rights.

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1        C. A network company's failure to comply with the provisions of this Chapter 8.40 shall

2 not render any contract between the network company and an app-based worker void or

3 voidable.

4        D. No provision of this Chapter 8.40 shall be construed as providing a determination

5 about the legal classification of any individual as an employee or independent contractor.

6 **8.40.250 Severability**

7 The provisions of this Chapter 8.40 are declared to be separate and severable. If any clause,

8 sentence, paragraph, subdivision, section, subsection, or portion of this Chapter 8.40, or the

9 application thereof to any network company, app-based worker, person, or circumstance, is held

10 to be invalid, it shall not affect the validity of the remainder of this Chapter 8.40, or the validity

11 of its application to other persons or circumstances.

12        Section 3. Section 3.02.125 of the Seattle Municipal Code, last amended by Ordinance

13 126788, is amended as follows:

14 **3.02.125 Hearing Examiner filing fees**

15        A. The filing fee for a case before the City Hearing Examiner is $85, with the following

16 exceptions:

| Basis for Case | Fee in dollars |
|---|---|
| * * * | |
| All-Gender Restroom Notice of Violation (Section 14.07.040) | No fee |
| App-Based Worker Deactivation Rights Ordinance (Chapter 8.40) | No fee |
| App-Based Worker Minimum Payment Ordinance (Chapter 8.37) | No fee |
| * * * | |

17                          * * *

18        Section 4. The City Council requests that the Office of Labor Standards provide a report

19 back to Council on the implementation of this ordinance by no later than September 1, 2026.

*Template last revised December 2, 2021*

Jasmine Marwaha and Karina Bull
LEG App-Based Worker Deactivation Rights ORD
V5

1          Section 5. Section 2 of this ordinance shall take effect on January 1, 2025.

2          Section 6. This ordinance shall take effect and be in force 30 days after its approval by

3    the Mayor, but if not approved and returned by the Mayor within ten days after presentation, it

4    shall take effect as provided by Seattle Municipal Code Section 1.04.020.

5          Passed by the City Council the __8th__ day of __August__, 2023,

6    and signed by me in open session in authentication of its passage this __8th__ day of

7    __August__, 2023.

8          _____

9          President __Pro Tem__ of the City Council


10   ☑ Approved / ☐ returned unsigned / ☐ vetoed this __14th__ day of __August__, 2023.

11         _____

12         Bruce A. Harrell, Mayor


13   Filed by me this __14th__ day of __August__, 2023.

14         _____

15         Scheereen Dedman, City Clerk


16   (Seal)